No. 45,856

THE BOARD OF PARK COMMISSIONERS OF THE CITY OF WICHITA, KANSAS, A MUNICIPAL CORPORATION, *Appellant* and *Cross-Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS; RONALD G. MILLER, Treasurer of Sedgwick County, Kansas, et al., *Appellees* and *Cross-Appellants*.

(480 P. 2d 81)

Opinion filed January 23, 1971.

*H. Jay Setter*, of Wichita, argued the cause, and *John Dekker*, of Wichita, was with him on the brief for the appellant and cross-appellee.

*George D. McCarthy*, of Wichita, argued the cause, and was on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

HARMAN, C.: This is an action by the board of park commissioners of the city of Wichita for recovery of ad valorem taxes for the year 1968 paid under protest on a part of the municipal airport and public park land of the city of Wichita, and for injunctive relief from further assessment and taxation. In trial to the court the defendant Sedgwick county taxing officials prevailed and plaintiff has appealed.

In its ruling the trial court made no findings but simply held plaintiff had failed to sustain its burden of proof of exemption from taxation.

Plaintiff as a board of park commissioners is vested with jurisdiction over and control of the city's airport (K. S. A. 3-114) and its park property (K. S. A. 13-1346, *et seq.*). The suit, involving a total of sixty-eight separate tracts, is divided into two claims for relief, the subject matter of the first being a part of the municipal airport (tracts 1-28) and the second certain park property (tracts 29-68).

Although each side filed its separate statement as to the facts upon which the case was submitted and tried, there is no substantial factual dispute. We treat first with the municipal airport property. With a single exception each of these twenty-eight tracts had previously been removed from the tax rolls as exempt property by order of the state board of tax appeals (or its predecessor body). In 1968 all were by the appellee taxing authorities placed on the tax rolls and assessed. Appellant subsequently paid the 1968 tax under protest and, pursuant to K. S. A. 79-2005, filed this suit for recovery.

The largest tract, No. 23, consists of approximately 2170 acres of which about 965 acres were placed on the tax rolls. The acreage taxed included land used for various business buildings, hangars and cargo buildings under lease to private persons or agencies. It did not include administrative offices, terminal facilities or runways, taxiways or areas containing the approach lighting. No farming other than for land maintenance was in use at the time in question although apparently some farming had previously been done. The area included future runways under construction, additional taxiways, access roads, sewers and other utilities.

Description and use of the smaller tracts may be summarized. Generally these comprised what are known as clear zone areas under the approach paths of the various runways required by the Federal Aviation Administration. No structures or improvements were permitted. The record is not entirely clear either as to the nature or extent of farming operations carried on but in some instances they consisted of minimum land maintenance performed by park board personnel. In every instance any farming done was for the same purpose of land maintenance in conformity with FAA requirements. Some of the land served as a buffer zone, some contained approach paths for runways under construction and some will house airport equipment.

Appellant park board urges the applicable statute was K. S. A. 13-1406 (since repealed) which provided:

"Lands, buildings, money, debts due the city and all other property and assets belonging to the city shall be exempt from taxation, execution, and sale: *Provided,* That if any of such lands, buildings, or other property or assets are leased, loaned or otherwise made available to any person, firm or corporation for use in any trade, business or commercial enterprise, such lands, buildings or other property and assets so leased, loaned or otherwise made available shall not be exempt from taxation for and during the term or terms thereof, *except that this proviso shall not apply to municipal airports and municipal swimming pools;* or city owned property which is temporarily, occasionally or partially leased for the general use or entertainment of the public, or to cafeterias and concession stands in or on city owned property." (Emphasis supplied.)

Appellant points out the predecessor of this statute was G. S. 1949, 13-1406, which simply stated:

"Lands, buildings, money, debts due the city and all other property and assets belonging to the city shall be exempt from taxation, execution, and sale."

Under statutes of this character it was held ownership, and not exclusive use, was the test for exemption from taxation of city owned property; also that the power of the legislature to establish exemption of property from taxation was not limited by article 11, section 1, of the state constitution (*City of Harper v. Fink,* 148 Kan. 278, 80 P. 2d 1080), provided the exemption has a public purpose and is designed to advance the public welfare (*State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373).

In 1963 the statute respecting taxation of property owned by cities of the first class was amended to the form quoted above as K. S. A. 13-1406.

Appellant argues that from the plain language in 13-1406 munici-

pally owned airport property is not subject to the taxing proviso and is therefore exempt from taxation irrespective of the fact it may be leased, loaned or otherwise made available for commercial enterprise. Appellant points to other statutes applicable to ownership and operation of municipal airports: K. S. A. 3-113 authorizes a city to acquire, operate and maintain an airport and also to acquire such servitudes or easements over surrounding lands as are necessary to provide safe and unobstructed approaches thereto; succeeding provisions empower a city to issue bonds and levy taxes for airport purposes; K. S. A. 3-116 authorizes a city to lease the whole or any part of its airport property to private persons for any purpose directly or incidentally and necessarily required for the successful and proper operation of such property; for such leases fair and reasonable compensation is to be paid the city; K. S. A. 79-2925, a part of our budget law, directs that any revenues received from such leasing be paid into the airport operating fund, and further that any profits arising from operation of the airport after payment of operating expenses and establishment of the revolving fund shall be applied to reduce the tax levy for the budgeted fund under which the operation of the airport is financed.

Appellant points out that a large portion of the airport property is open-space land which is necessary for clear zones, instrument landing and take off, and approach and visibility zones as well as serving as buffer zones around the airport. Most of the land is not used for anything other than being reserved for the foregoing which is required by FAA regulations. These regulations permit land maintenance on airports which does not interfere with air traffic and which does not create hazardous conditions. To this end much of the open-space land has been put to agricultural use by appellant rather than permitting weeds to grow, and any revenues derived either from agricultural pursuits or other leasing is paid into the airport operating fund. These revenues go to reduce taxes otherwise required to support such operation ( K. S. A. 79-2925); appellant further points out its airport has been self-sustaining so far as the local taxpayer has been concerned in that a tax levy for maintenance and operation of the airport has never been required.

From all the foregoing appellant deduces clear legislative intent that airport land and facilities should not be taxed.

Appellees counter that exclusive use is the test of municipal exemption from taxation and the applicable statute was K. S. A. 1968 Supp. 79-201, which provided in pertinent part:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation:

.　.　.　.　.　.　.　.　.　.　.　.　.　.　.

"*Sixth.* All property belonging to and used exclusively by the state or any municipality or political subdivision of the state, except lands bid off for counties or cities at tax sales: *Provided,* That if any of such property is leased, loaned or otherwise made available to any person, firm or corporation for use in any trade, business or commercial enterprise, such property so leased, loaned, or otherwise made available shall not be exempt from taxation, for and during the term or terms thereof, except that this proviso shall not apply to municipal airports, swimming pools, auditoriums, fair buildings and grounds, state buildings, school buildings, or publicly owned park and recreational facilities which are owned by the state, municipality or any political subdivision of the state which are temporarily, occasionally or partially leased for the general use or entertainment of the public, or to cafeterias and concessions in or on property owned by the state, municipality, or political subdivision of the state which are incidental to the public use of the property; . . ."

The reader is alerted to the different treatment accorded municipal airports from that in 13-1406.

In recent years 79-201 has received frequent legislative overhaul. It was amended in 1963, the same year 13-1406 was amended to the form with which we are now concerned, and again in 1965. The interested reader will find the change effected by the 1965 amendment set out in *City of Winfield v. Board of County Commissioners,* 205 Kan. 333, 335-336, 469 P. 2d 424, 426-427. Suffice it to say here the 1965 amendment was a departure from similar language used in 13-1406, with respect to municipal airports and swimming pools, which was not so amended during the period in question here.

In *City of Arkansas City v. Board of County Commissioners,* 197 Kan. 728, 420 P. 2d 1016, a situation was presented which at first blush might appear to be somewhat similar to the case at bar in that the county taxed assets which had been a part of an airport, title to which had reverted to two second class cities. The cities had executed oil and gas leases on the property upon which production was developed. The cities' one-eighth royalty interest was placed upon the tax rolls pursuant to K. S. A. 79-330 and 79-331. In effect during the period in question was K. S. A. 14-1001

which contained language virtually identical to that in 13-1406, the difference being the former was applicable to second class cities while the latter pertained to first class cities. Both had undergone the same amendment in 1963. This court approved the assessment and tax levy, holding that the amendment adding the proviso concerning city owned property leased, loaned or otherwise made available in a trade, business or commercial enterprise eliminated ownership as the test of exemption and made use the important factor. The opinion carefully pointed out the parties had stipulated the property in question was not a municipal airport within the purview of any of the enumerated statutory exceptions.

The same airport was again the subject of litigation in *City of Winfield v. Board of County Commissioners,* supra. This court considered the provisions both of K. S. A. 14-1001 and K. S. A. 1965 Supp. 79-201, *Sixth,* particularly noting the punctuation of the former with respect to its proviso, but, in view of the facts, found it is unnecessary to reconcile the discrepancies between the two statutes. Taking the view most favorable to the taxing officials by treating the case under 79-201 with its more restricted exemptions, it was held the farming done on the property was merely incidental to its exclusive use as a municipal airport and did not alter the primary use of the premises as a public airport. Tax exemption was sustained.

Our problem here resolves into this: If appellant is correct and 13-1406 applies, municipal airports owned by a city are by plain statutory language excepted from the taxing proviso prescribed therein; if appellees are correct and K. S. A. 1968 Supp. 79-201 applies, then municipally owned property to be exempt must be used exclusively for municipal purposes. The trial court may have taken this latter view; however, we lack the benefit of its reasoning.

Although the question is not wholly free from difficulty because two differing statutes are involved, we are inclined to the view urged by appellant—that 13-1406 was the applicable statute. Our cases are legion that general and special statutes should be read together and harmonized where possible, but to the extent of repugnancy between them the special statute will prevail over the general unless it appears the legislature intended to make the general act controlling (5 Hatcher's Kansas Digest, rev. ed., Statutes, § 80; 9 West's Kansas Digest, Statutes § 225½).

K. S. A. 1968 Supp. 79-201 and its predecessors have always been in the nature of general statutes establishing tax exemptions although expanding specificity is apparent. Their application has been to municipally owned property generally. On the other hand 13-1406 was applicable to property owned by cities of the first class and other statutes specifically authorized such a city's leasing of airport facilities with disbursement of revenue raised by such activity directed to reduce tax levies under which operation of the airport was financed. We think these are specific in nature and evince legislative intent that municipal airport facilities were not to be taxed, and we so hold. Moreover, we have difficulty conceiving legislative intendment that a tax-supportable activity be subject to ad valorem taxation. As already noted 13-1406 has now been repealed and 79-201, *Sixth*, has been substantially changed effective January 1, 1970 (Laws, 1969, Chap. 429, §§ 1, 3).

We turn now to the forty separate tracts comprising park property placed on the tax rolls. First, park property owned by cities of the first class is not excepted from the proviso contained in 13-1406 as are airports; hence exemption from taxation of that property depends upon whether it is leased, loaned or otherwise made available to any person, firm or corporation for use in any trade, business or commercial enterprise. If so leased or made available it loses its exempt status and becomes taxable.

Appellant concedes certain tracts are properly taxable and as to them the judgment must be affirmed. These are tract 29 consisting of 9.34 acres under lease to a riding academy; tract 30 consisting of twenty-five acres under lease for farming; and tract 67 consisting of 151.23 acres under lease for farming and upon which a farmhouse was rented as a place of residence.

The remaining tracts were acquired by the city for future park use, mostly under the federal government's open-space land, urban beautification and historic preservation program (42 USCA § 1500, *et seq.*). As we understand the stipulations none of the tracts was actually made available to anyone in any trade, business or commercial enterprise and no income deriving from private enterprise appears to have been generated on them. Some were maintained by park or airport personnel on a minimum land maintenance basis. A residence upon one tract near the airport was occupied by the airport manager as required by the park board, being the only such available living quarters; no rent was received. A golf

course was under construction on a part of one tract. The primary use of all the tracts remained public in character. The property clearly has not lost its exempt status under 13-1406 for the year in question and it is so held.

By way of cross-appeal appellees raise several questions. They complain of the trial court's denial of their motion to dismiss because of appellant's failure to join the state board of tax appeals as a party defendant, contending the board was an indispensable party. In *Cities Service Oil Co. v. Kronewitter,* 199 Kan. 228, 428 P. 2d 804, we held to the contrary, stating:

> "Public officials who determine or review valuation and assessment of property for taxation purposes do not thereby become indispensable, necessary or proper parties defendant in an action to recover taxes paid under protest pursuant to K. S. A. 79-2005." (Syl. ¶ 3.)

Appellees further contend the trial court had no jurisdiction over the subject matter of the action because appellant made no application to the state board of tax appeals for exemption of the properties in question. They argue that once the assessor has assessed property the county officials have no further authority to undo the assessor's action and that an owner whose property has been assessed must first exhaust his administrative remedy before resorting to suit. Appellees' contentions are premised upon a factual misinterpretation. The record reveals that of the 65 tracts whose status is now at issue, appellant had in fact made application to the state board of tax appeals at various times for exemption as to each and, as already indicated, many exemptions had actually been allowed.

More importantly, K. S. A. 79-2005 provides that a taxpayer after paying his taxes under protest shall within thirty days either commence an action for the recovery thereof in some court of competent jurisdiction or file an application with the state board of tax appeals for a hearing on the validity of such protest. We have many times construed this section to mean that which it plainly says—cumulative remedies are authorized and nothing in our law prevents a taxpayer from paying allegedly illegal taxes under protest and then maintaining a judicial action for their recovery (5 Hatcher's Kansas Digest, rev. ed., Taxes, § 139; 9 West's Kansas Digest, Taxation, § 543 [1] [2]).

Appellant has also sought declaratory and injunctive relief removing its properties from the tax rolls for the future. Upon oral

argument we were told appellant had paid the 1969 taxes under protest and filed a similar suit for recovery and the parties had agreed the result there would be controlled by our decision herein, and that they were still in controversy over the 1970 taxes. In view of the change in our laws effective January 1, 1970, already referred to, we must decline any expression in the nature of declaratory judgment.

Upon direct appeal the judgment is affirmed insofar as tracts 29, 30 and 67 are concerned; as to the remaining tracts it is reversed with directions to enter judgment for appellant for recovery of taxes paid under protest; upon cross-appeal the judgment is affirmed; costs are apportioned two-thirds against appellees and one-third against appellant.

APPROVED BY THE COURT.