No. 52,348

SHIELDS OIL PRODUCERS, INC., *et al., Appellees,* v. THE COUNTY OF
RUSSELL, KANSAS, *et al.,* Appellants.

(629 P.2d 152)

Opinion filed
June 10, 1981.

*Larry D. Ehrlich,* county attorney, argued the cause and was on the brief for the
appellants.

*Robert L. Earnest,* of Russell, argued the cause and was on the brief for the
appellees.

The opinion of the court was delivered by

MCFARLAND, J.: The sole issue herein is whether the trial court
erred in concluding the defendant board of county commission-
ers, sitting as a board of equalization, acted arbitrarily and capri-
ciously in rescinding its previous order which had reduced the
assessed valuation of all personal property by 23%.

The facts need to be set forth in some detail. On May 7, 1979,
the plaintiff oil producers (hereinafter referred to as taxpayers)
appeared before the defendant board of county commissioners,
sitting as a board of equalization (hereinafter referred to as county
board). The taxpayers were not appearing in connection with any
formal appeal to the county board pursuant to K.S.A. 79-1602, but
were seeking reduction of taxes on certain equipment owned by

the respective taxpayers and used in connection with the production of oil. It is unclear whether they were requesting lower appraised values or a reduction in the assessment percentage. The county board heard the taxpayers' presentation and voted to reduce the assessed valuation of *all* personal property in the defendant county by 23%.

One week later (May 14, 1979) the county board again met, apparently had second thoughts relative to the propriety of its earlier action, and rescinded the 23% reduction. Taxpayers were not present at this meeting and had not been notified the reduction would be reconsidered. Taxpayers learned of the county board's action through the news media and again appeared before the county board on May 29, 1979, seeking reinstatement of the rescinded reduction. The county board declined to take such action. Taxpayers did not appeal to the State Board of Tax Appeals as authorized by K.S.A. 79-1609. Taxpayers paid the first half of the taxes under protest and commenced the action herein, challenging the validity of their respective assessments. Trial was had on stipulated facts. The trial court invalidated the rescinding of the reduction as it applied to taxpayers' personal property. The defendant county and the various defendant public officials appeal from said determination.

In concluding that the county board had acted arbitrarily and capriciously the trial court reasoned as follows: (1) Pursuant to K.S.A. 79-1606 the taxpayers had until May 10 to file an appeal to the county board relative to the assessed valuations of their personal property; (2) the taxpayers appeared before the county board on May 7 and received the relief they wanted from the assessed valuation; (3) on May 10 the taxpayers, accordingly, were satisfied with the assessed valuations and did not appeal; (4) the May 14 rescinding of the reduction had the effect of denying the taxpayers their right of appeal to the county board, since it occurred after May 10; and (5) the county board was therefore bound by its May 7 decision. The trial court also equated the proceedings before the county board with judicial proceedings.

This entire line of reasoning is specious. The duties of the county board are set forth in K.S.A. 79-1602 as follows in relevant part:

"The *county board* . . . *shall* . . . *meet for the purpose of inquiring into the valuation of tangible personal property in the county, and shall review the*

*assessment rolls of the county* as to accuracy, completeness and uniformity of assessment, *and shall make such changes* in the assessment of property *as* shall be *necessary* in order *to secure uniform and equal assessment of all property.*

"In all cases where it shall become necessary to increase the assessment of specific tracts or individual items of real or personal property, except where the assessment of a class or classes of property in any area or areas of the county is raised by a general order applicable to all property in such class or classes for the purpose of equalization, the county clerk shall, at least ten (10) days prior to hearing, mail or cause to be mailed a notice to the person to be affected thereby at his or her post-office address as shown by the assessment rolls, stating in substance that it is proposed to increase the assessment of such . . . individual items of his or her . . . personal property, and fixing the time and place when a hearing thereon will be had.

"The board shall hear and determine any appeal made by any taxpayer as to the assessment and valuation of any property in the county which may be made to the board by the owner of such property or his or her agent or attorney, and shall perform the duties hereinbefore set out in this section. . . .

"The session of the board held for the purpose of considering the valuation of personal property shall commence not later than the fifteenth day in May . . . and shall remain in session until the last business day in May, during which time the board may adjourn from time to time as may be necessary, and at the expiration of the last business day in May, the board shall adjourn until June fifth, when it shall again reconvene for the purpose of hearing appeals from persons who have been notified by the county clerk of pending changes in the valuation of their personal property as provided above, but such adjourned session shall not continue for more than ten (10) days, after which the board shall adjourn sine die, which adjournment must be taken on or before the 15th day of June, . . . and the board shall have no authority to be in session thereafter; and after such final adjournment the board shall not change the assessed valuation of the personal property of any person or reduce the aggregate amount of the assessed valuation of the taxable personal property of the county." [Emphasis added.]

Clearly, the county board has substantially greater duties than just to hear appeals. Totally separate and apart from any appeals to it, the county board is charged with reviewing the assessment rolls and making such changes as are necessary to secure "uniform and equal assessment." Where an increase in the value placed by the county assessor on an individual item of personal property is contemplated by the county board, the owner must be notified of the proposed increase and given an opportunity to be heard. No notice is required if assessments are increased by general order applicable to a class of property. Jurisdiction for the county board to change an assessed valuation is not dependent upon an appeal to the board. Further, unlike in judicial proceedings, *anyone aggrieved by an order of the county board may*

appeal to the State Board of Tax Appeals (K.S.A. 79-1609) and such right is not conditioned on prior appeal or upon being a party to a proceeding before the board.

K.S.A. 79-1606 is the statute relative to appeals to the county board and provides in relevant part:

"The county clerk shall furnish appeal forms to any owner of property which has been assessed who desires to appeal to the county board of equalization as to the assessment . . . of his or her personal property made prior to May 1 of the year of assessment by the deputy assessor or the county assessor: *Provided*, . . . any appeal in writing involving the assessment of personal property must be filed with the county clerk on or before the tenth day of May of the year in which the assessment is made.

"Every appeal so filed shall be set for hearing by the county board of equalization."

Although primarily concerned with K.S.A. 79-1446 and the duties of the director of property valuation, *State, ex rel., v. Dwyer,* 208 Kan. 437, 493 P.2d 1095 (1972), discusses generally due process requirements in equalization procedures. The court held in Syl. ¶ ¶ 1, 2 and 4:

"The law recognizes a distinction between the process of assessment, by which properties are valued on an individual basis, and blanket equalization procedures, whereby changes may be made in assessed values affecting all or an entire class of property within a taxing district."

"Prior notice is not required to be given where equalization of assessed values is effected by means of increasing or decreasing the value of all taxable property, or a class thereof, in an assessment or taxing district."

"The constitutional requirements of due process are satisfied where avenues for relief are open to the taxpayer at some stage of the assessment procedures providing him an opportunity to appear and contest the assessment."

It is undisputed the taxpayers herein had the opportunity to and did appear before the county board and contest the original assessed valuations of their respective property. K.S.A. 79-1602 and 79-1606 provide the procedure for opportunity to be heard as a matter of right. The taxpayers had the opportunity to be heard before the county board, although not utilizing the appeal procedures (hearing as a matter of right). The county board heard the taxpayers and responded with a 23% reduction in assessed valuation of *all* personal property. Later, the action was rescinded and taxpayers were afforded an opportunity by the county board to be heard on that matter.

It would be wholly inconsistent with the concept of tax equalization to hold that within the period of time afforded for such

equalization a county board does not have continuing jurisdiction to perform its duties. The county board concluded that its May 7 order was improper and rescinded it. This can hardly be an arbitrary and capricious act under the circumstances herein. If the taxpayers were dissatisfied they could have appealed to the State Board of Tax Appeals. Taxpayers had full opportunity to be heard—no denial of due process has occurred.

The test for granting relief to a taxpayer who protests the assessment and valuation of his property (now K.S.A. 1980 Supp. 79-2005) was set forth in the early case of *Symns v. Graves,* 65 Kan. 628, 636-637, 70 Pac. 591 (1902), as follows:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case. (*Auditor of State v. A. T. & S. F. Railroad Co.,* 6 Kan. 500, 7 Am. Rep. 575; *K. P. Rly. Co. v. Comm'rs of Ellis Co.,* 19 id. 584.)

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. Are the acts of the board of equalization in this case so arbitrary, then, as to amount to official misconduct or fraud?"

See also *Northern Natural Gas Co. v. Williams,* 208 Kan. 407, 413, 493 P.2d 568, *cert. denied* 406 U.S. 967 (1972); *Panhandle Eastern Pipe Line Co. v. Dwyer,* 207 Kan. 417, 420, 485 P.2d 149 (1971), *cert. denied* 406 U.S. 967 (1972); and *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, Syl. ¶ ¶ 5-6, 436 P.2d 982 (1968).

It is undisputed that all personal property in the county was assessed at 30% of appraised value except for the one week the 23% reduction was in effect. All taxable personal property in the county was assessed at the same percentage at any given point in time. K.S.A. 79-1439 requires taxable personal property to be assessed at 30% of its appraised value.

We have no hesitancy in concluding the trial court erred in holding that the county board acted arbitrarily and capriciously in restoring the assessment percentage to 30% of appraised value.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.