No. 68,617

J. ENTERPRISES, INC., d/b/a COLORTYME, *Appellee*, v. BOARD OF
COUNTY COMMISSIONERS OF HARVEY COUNTY, KANSAS, *et al.*,
*Appellants.*

(857 P.2d 666)

Opinion filed July 30, 1993.

*Thomas R. Docking,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Gerald N. Capps,* of the same firm, was with him on the brief for appellants.

*Robert J. O'Connor,* of Morrison & Hecker, of Wichita, argued the cause, and *Pamela Clancy,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Harvey County appeals the trial court's summary judgment ruling that "rent-to-own" personal property of J. Enterprises, Inc., d/b/a Colortyme (Colortyme), is exempt from Kansas ad valorem tax as inventory under K.S.A. 1992 Supp. 79-201m.

In 1991 the Harvey County appraiser performed a compliance review on Colortyme's 1990 and 1991 ad valorem personal property tax renditions. The review revealed that Colortyme did not include its "rent-to-own" property on its 1990 and 1991 renditions. Colortyme excluded its "rent-to-own" property as exempt inventory under K.S.A. 1992 Supp. 79-201m.

In January 1992 the Board of County Commissioners (the County) assessed additional 1990 and 1991 property taxes against Colortyme's rent-to-own property. The additional taxes totaled $24,441.86. The County also assessed a 100% penalty pursuant to K.S.A. 1992 Supp. 79-1427a.

Colortyme filed an action for declaratory and injunctive relief pursuant to K.S.A. 60-907(a). Colortyme alleged that its rent-to-own property was exempt "merchant's inventory" and sought a determination that the tax assessments and penalties were illegal, void, and unenforceable. Colortyme asked the court to enjoin the county from collecting the taxes and penalty. Colortyme also sought a declaratory judgment that the contract under which the tax compliance audits were conducted was illegal, void, and unenforceable, but that issue is not before us.

The County claimed that (1) Colortyme did not purchase its rent-to-own property "primarily for resale in the ordinary course of business" (as required by K.S.A. 1992 Supp. 79-201m); (2)

Colortyme purchased the property primarily for rental, which constitutes an intervening, not incidental, use under K.S.A. 1992 Supp. 79-201m(a)(1); and (3) Colortyme depreciates its rent-to-own property on its federal income tax return, which precludes its claim that the property is exempt as inventory. The district court rejected the County's claim, found that the property was exempt as inventory, and issued a permanent injunction enjoining the County from collecting ad valorem taxes and penalties on Colortyme's rent-to-own property. The County originally appealed to the Court of Appeals, but the matter was transferred to this court pursuant to K.S.A. 20-3018(c).

Neither the district court nor the parties questioned the jurisdiction of the district court. In light of our recent decision in *Dean v. State*, 250 Kan. 417, 826 P.2d 1372 (1992), and the following statement from that case, we raised the question of our jurisdiction during oral argument:

"In the realm of taxes, matters of assessment, *exemption*, equalization, and valuation are administrative in character. See *Symns v. Graves*, 65 Kan. 628, 636, 70 Pac. 591 (1902). Under Kansas law, *it would be unwarranted for a court to entertain a tax suit on any of these matters of administrative expertise where administrative remedies had not been pursued.*" (Emphasis added.) 250 Kan. at 421.

We are duty-bound to raise the question of jurisdiction on our own motion as we have done in this case. If it is determined that the district court had no jurisdiction, we do not acquire jurisdiction over the subject matter upon appeal. *In re Lakeview Gardens, Inc.*, 227 Kan. 161, Syl. ¶ 8, 605 P.2d 576 (1980). See *Tri-County Public Airport Authority v. Board of Morris County Comm'rs*, 233 Kan. 960, 967, 666 P.2d 698 (1983).

We granted the parties additional time after oral argument to address the question of jurisdiction. Both parties responded by letter briefs. We have considered the additional authorities submitted by the parties and conclude that the district court did not have jurisdiction to consider the merits of the appeal because Colortyme did not exhaust its administrative remedies before applying to the court for relief. We therefore remand to the district court with directions to set aside the judgment and to dismiss the case.

## JURISDICTION

The argument that the district court had no jurisdiction is as follows. The question of whether property is exempt as inventory is primarily a tax question which, according to the present Kansas statutory and regulatory scheme, ought to be decided in the first instance by the paramount taxing authority in this state, the Board of Tax Appeals (BOTA). Once administrative remedies are exhausted, an aggrieved party may have resort to the courts.

The question of whether Colortyme's rent-to-own property is exempt is, according to *Dean*, "administrative in character." As such, the doctrine of exhaustion of administrative remedies applies. In *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 95, 510 P.2d 132 (1973), we said:

"The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency."

It is important, we believe, that the question on appeal involves the interpretation of a tax exemption statute, K.S.A. 1992 Supp. 79-201m. Neither the district court nor the parties question the validity of the statute. All parties accept that this is the law in Kansas. The question is whether the County *erroneously interpreted* the statute and has little to do with the *legality* of the County's actions.

Colortyme contends that the district court had jurisdiction because Colortyme sought to enjoin the County from illegally levying and collecting ad valorem taxes and penalties on its rent-to-own inventory. Based upon its allegations of illegality, Colortyme claimed that the trial court had jurisdiction to hear and determine this case under the provisions of K.S.A. 60-907(a), which provides as follows:

"Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same."

The answer to the jurisdiction question depends not so much upon what a party claims as relief before the district court as it

does on the nature of the actual relief sought. Colortyme contends that it does not seek "tax relief" but only injunctive relief because the tax assessments are illegal. While it claims the assessments are illegal, its ultimate success in the district court was directly dependent upon convincing the court that the County's application of the statute under the facts was erroneous, not that the acts of the County were illegal. Colortyme sought to be free of the assessments.

If a party may confer jurisdiction upon the courts under 60-907(a) by claiming that the actions of a taxing authority are illegal, concurrent jurisdiction would exist in nearly every case with the district court and with BOTA. In all cases where a taxpayer claimed an exemption, the taxpayer would only need to claim that the tax assessed was illegal in order to confer jurisdiction upon the district court and bypass BOTA completely. The present remedy for a taxpayer claiming exemption from ad valorem taxes is exclusive, conferring no original jurisdiction on the district court, but requiring the taxpayer to exhaust remedies before BOTA prior to applying to the district court for relief.

Past decisions of this court provide some guidance in clarifying the jurisdictional question of whether plaintiff must first exhaust its administrative remedies. These decisions make it clear that neither semantics nor how one couches his or her request for relief keys the result.

As early as 1902, this court in *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591 (1902), discussed the difference between administrative and judicial concerns. *Symns* involved an administrative action by the board of equalization involving the valuation of real estate for purposes of taxation. The court delineated administrative and judicial functions as follows:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waved aside to meet the exigencies of any particular case. [Citations omitted.]

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity." *Symns,* 65 Kan. at 636.

*Symns* then asks the queston: "Are the acts of the board of equalization in this case so arbitrary, then, as to amount to official misconduct or fraud?" 65 Kan. at 637.

We have applied *Symns* as the test for determining whether jurisdiction exists in the courts in the first instance, or whether a party is required to first exhaust administrative remedies. See *Shields Oil Producers, Inc. v. County of Russell,* 229 Kan. 579, 583, 629 P.2d 152 (1981).

*Mobil Oil Corporation v. McHenry,* 200 Kan. 212, 234, 436 P.2d 982 (1968), admittedly involved an assessment rather than an exemption, but nevertheless involved a question of delineating judicial and administrative functions. In *McHenry,* the court said:

"Cases thoughout the history of Kansas disclose that the expression 'the illegal levy of any tax, charge or assessment,' contained in 60-907, *supra,* and its predecessors, has reference to action of an administrative official or board *taken without authority, or action of an administrative official or board which is permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud in connection* with the levy of any tax, charge or assessment." (Emphasis added.)

In that same year, we decided *Harshberger v. Board of County Commissioners,* 201 Kan. 592, 594-95, 442 P.2d 5 (1968). Although *Harshberger* also involved assessment, the court's analysis of the judicial and administrative functions applies equally to cases involving exemptions:

"The courts have no difficulty with their power and authority where taxing bodies are attempting to proceed without statutory authority or contrary to statute [citation omitted] or where taxing authorities are proceeding against property outside their jurisdiction [citation omitted]. These are matters rightly within the province of the judiciary. However, when courts are confronted with purely administrative acts relating to taxation their jurisdiction becomes quite limited.

". . . Matters of taxation, especially assessments, are administrative in their character and should remain free of judicial interference in the absence of fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud."

The *Harshberger* court noted that

"[a]ll of our decisions indicate that the correction of alleged errors in the valuation of real estate for the determination of the proper assessment is an administrative function and not judicial, and unless the assessment is fraudulent or void or the action is one for an interpretation of law." 201 Kan. at 596.

In its letter brief to this court, Colortyme relies upon the case of *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs,* 235 Kan. 958, 685 P.2d 886 (1984), for authority that the district court had jurisdiction under the provisions of K.S.A. 60-907(a) to entertain this action. However, upon a careful reading of *Misco Industries* and authorities cited therein, *Misco Industries* does not support Colortyme's position. Colortyme relies upon the following language from *Misco Industries* to support its position:

"However, where state and local tax officials do not perform their duties in accordance with the law, the issue presented to the court is not the exercise of their administrative judgment, but the legality of their acts. The courts have no difficulty with their power and authority where taxing officials attempt to proceed without statutory authority or to proceed contrary to the statutes; such matters are within the province of the judiciary. *Mobil Oil Corporation v. Medcalf,* 207 Kan. 100, 483 P.2d 1111 (1971)." 235 Kan. at 966-67.

At first blush, it would appear that the above statement provides some support for Colortyme in regard to its contention that jurisidiction in the district court existed. *Misco Industries* relied upon the case of *Mobil Oil Corporation v. Medcalf,* 207 Kan. 100, 104, 483 P.2d 1111 (1971), in which that same statement was supported by the following citation of authority *Garvey Grain, Inc. v. MacDonald,* 203 Kan. 1, 453 P.2d 59 (1969); *Mobil Oil Corporation v. Reynolds,* 202 Kan. 179, 446 P.2d 715 (1968); *Harshberger v. Board of County Commissioners,* 201 Kan. 592; *Mobil Oil Corporation v. McHenry,* 200 Kan. 211; *Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P.2d 906 (1967); *Schulenberg v. City of Reading,* 196 Kan. 43, 410 P.2d 324 (1966).

In *Garvey Grain* the court said:

"It is the settled law in this jurisdiction that the assessment of property for tax purposes may not be set aside on account of mere errors of judgment on the part of the assessing officials. . . . Before courts will interfere [in

assessment matters], the conduct of the assessing officer must be without authority or so arbitrary or unreasonable as to amount to constructive fraud. The rule is merely the specific application of the rule of law that the assessment of property, *when done in accordance with law,* is an administrative function in which courts do not interfere or substitute their judgment for that of the administrative authority." 203 Kan. at 13.

In *Mobil Oil Corporation v. Reynolds,* the court clearly delineates jurisdiction of the district court:

"The expression 'illegal levy of any tax, charge or assessment' as contained in K.S.A. 60-907(a) has reference to action of an administrative official or board taken without statutory authority or contrary to statutory authority or to action taken by an administrative official or board which is permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud in connection with the levy of a tax, charge or assessment." 202 Kan. 179, Syl. ¶ 1.

Similar language appears in *McHenry,* 200 Kan. 211, Syl. ¶ 10, and in *Harshberger,* 201 Kan. 592, Syl. ¶ 3.

In both *Schulenberg* and *Brookover,* the court required a finding that the official action must amount to "fraud, corruption [or] conduct so oppressive, arbitrary or capricious as to amount to fraud" in order to give rise to jurisdiction in the district court. *Schulenberg,* 196 Kan. at 53; see *Brookover,* 198 Kan. at 73. In *Schulenberg,* plaintiffs challenged a special assessment. This court found that the plaintiffs' allegations "if not expressly alleging fraud, allege conduct so oppressive, arbitrary, unlawful and capricious as amounting to fraud." 196 Kan. at 54. The court found that the assessments were palpably unjust, unreasonable, and discriminatory and that the plaintiffs were entitled to equitable relief. 196 Kan. at 55. In *Brookover* this court affirmed the trial court's finding that the defendants' acts were "free from any capricious, arbitrary, oppressive or unreasonable conduct." 198 Kan. at 72.

The court's comment in *Misco Industries, Inc.* that "courts have no difficulty with their power and authority where taxing officials attempt to proceed without statutory authority or to proceed contrary to the statutes" must be viewed in light of its supporting authorities, which help to define "without statutory authority" and "contrary to the statutes." See *Mobil Oil Corporation v. Medcalf,* 207 Kan. at 104 and authorities cited therein. In those cases where the county taxing authority acts in good faith and

its action is taken in accordance with law but may involve an erroneous application of the law, administrative relief is provided for by statute.

Colortyme argues that the court must resolve this dispute because it involves an interpretation of the law regarding inventory. Yet, the interpretation of a statute is not a uniquely judicial function, particularly in the area of taxation. In many (if not all) instances, the question of whether an exemption applies requires statutory interpretation. See *Board of Johnson County Comm'rs v. St. Joseph Hosp.*, 241 Kan. 613, 615, 738 P.2d 454 (1987). The board charged with the responsibility of deciding tax matters in Kansas is suited for resolving tax exemption claims even though such claims involve statutory interpretation.

*Dean v. State*, 250 Kan. 417, 826 P.2d 1372 (1992), tells us that the question of exemption is administrative in character and clearly a question of taxation. It would be difficult to claim with any conviction that the County's assessment of tax in this case was fraudulent, without statutory authority, or the result of corruption or was action that amounted to official misconduct in office. The concurring and dissenting opinion in *Northern Natural Gas Co. v. Williams*, 208 Kan. 407, 493 P.2d 568, *cert. denied* 406 U.S. 967 (1972), summarized the definitions of the key terms at issue here:

"This court has defined *arbitrary* to mean 'without adequate determining principles . . . not done or acting according to reason or judgment'; *oppressive*, as 'harsh, rigorous, or severe'; *capricious*, as 'changing apparently without regard to any laws.' (*Eureka B. & L. Ass'n v. Myer*, 147 Kan. 609, 78 P.2d 68.) In *City of Clay Center v. Meyers*, 52 Kan. 363, 365, 35 Pac. 25, we defined *constructive fraud* to mean 'any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another.' " 208 Kan. at 430 (Fatzer, C.J., concurring and dissenting).

Under the above definitions, it is clear that the actions of the County in assessing taxation in this case were not arbitrary, oppressive, or capricious. Nor did the County's assessment amount to constructive fraud. Without deciding the issue, the action of the County in making the assessment may have been erroneous, but certainly its action was not illegal. There simply was no jurisdiction in the district court under 60-907(a) to entertain the

case before Colortyme exhausted its administrative remedies before BOTA.

## ADEQUACY OF REMEDY

In the case of *State ex rel. Smith v. Miller*, 239 Kan. 187, Syl. ¶ 1, 718 P.2d 1298 (1986), we said:

"The well-recognized rule in this state is that where a full and adequate administrative remedy is provided in tax matters by statute, such remedy must ordinarily be exhausted before a litigant may resort to the courts."

In Syl. ¶ 2, we said:

"A party aggrieved by an administrative ruling is not free to pick and choose a procedure in an action in the district court in order to avoid the necessity of pursuing his remedy through administrative channels."

*Miller* relied upon an earlier case of *Tri-County Public Airport Authority v. Board of Morris County Comm'rs*, 233 Kan. 960, 666 P.2d 698 (1983). While *Tri-County* involved an action in mandamus brought against the Board of County Commissioners to determine the tax-exempt status of certain real property owned by Tri-County, the holding of the court deals with the question of whether a taxpayer may go directly into the district court seeking such extraordinary remedies as mandamus and injunction without first exhausting administrative remedies. Writing for the majority, Justice Prager traces the historical development of the remedies granted to a taxpayer seeking an exemption from ad valorem taxes. The court concludes that a full and complete administrative remedy is provided to the taxpayer, which remedy must first be exhausted before the taxpayer may seek relief before a district court. It serves our purpose here to quote at length from the court's opinion:

"The 1941 legislature enacted G.S. 1935, 79-2005 (1941 Supp.) which is the forerunner of what is now K.S.A. 1982 Supp. 79-2005. The new statute for the first time gave a taxpayer protesting the payment of taxes the right to bring an action, within thirty days after the filing of his tax protest, in a court of competent jurisdiction or, in the alternative, the right to file an application with the state commission of revenue and taxation (now the state board of tax appeals). 79-2005 thus provided an alternative judicial remedy to an aggrieved taxpayer after paying his taxes under protest. The thirty-day limitation for filing the action in the district court was strictly enforced by the courts. Failure of the taxpayer to commence an action in district court to recover taxes paid under protest within thirty days after filing his

protest deprived the district court of jurisdiction. *Williams v. Board of County Commissioners,* 192 Kan. 548, 389 P.2d 795 (1964).

"The cases following the adoption of 79-2005 have consistently held that the remedies provided in that statute were cumulative, so that a taxpayer could pay his taxes under protest and either present his tax grievance to the administrative board provided for in the statute or file an action in district court within the time period allowed after protest. *Addington v. Board of County Commissioners,* 191 Kan. 528, 533, 382 P.2d 315 (1963); *Board of Park Commissioners v. Board of County Commissioners,* 206 Kan. 438, 480 P.2d 81 (1971).

"Unfortunately, the various Kansas statutes pertaining to procedure in the area of taxation, including appeals, were not organized into a complete, rational scheme. K.S.A. 74-2426 permitted an appeal from the state board of tax appeals in most cases, but there were limitations on the right of a taxpayer to appeal to district court under that statute. In the case of *In re Lakeview Gardens, Inc.,* 227 Kan. 161, 605 P.2d 576 (1980), it was held that the tax grievance statutes, Article 17 of.Chapter 79 of the Kansas Statutes Annotated, contained no provision for a right of appeal to the courts from orders of BOTA correcting or refusing to correct irregularities. The court held specifically that K.S.A. 1979 Supp. 74-2426, governing appeals from orders of BOTA was inapplicable to *original applications* for relief from tax grievances before BOTA under K.S.A. 79-1702. That case followed a prior decision, *City of Kansas City v. Jones & Laughlin Steel Corp.,* 187 Kan. 701, 704, 360 P.2d 29 (1961), which limited appeals to the courts under 74-2426 to such cases as are appealed from the directors of revenue and property valuation as distinguished from original applications. It held that, there being no statutory provision for appellate review, relief could be found in such equitable remedies as quo warranto, mandamus, or injunction.

"In the 1980 legislative session, the House Committee on Assessment and Taxation considered the confusion in the procedural aspects of the Kansas taxing laws. It introduced comprehensive legislation which sought to achieve a number of specific objectives: (1) The elimination of direct actions filed in the district court in tax grievance cases and the requirement in all tax protest cases of a hearing before the board of tax appeals, with right of appeal to the district court; (2) a codification of the tax exemption procedure in Chapter 79, Article 2, with provision for judicial review of tax exemption matters under an omnibus appeals procedure statute, covering every type of order of the board of tax appeals. Such omnibus procedure statute was to include protests, exemptions, and equalization appeals along with appeals involving all taxing departments.

"These basic objectives for tax procedural reform are clearly set forth in the minutes of the House Committee on Assessment and Taxation meeting held on March 3, 1980. Following hearings before the committee, the legislature enacted several bills which incorporated the proposed statutory changes and developed a legislative scheme involving procedure in all types of tax cases, including a method of appeal to the district courts in all cases

where a taxpayer deems himself aggrieved by orders of BOTA. All of these bills were enacted and approved by the Governor in April 1980, and became effective either during that month or on July 1, 1980, after the effective date of all the new statutory provisions. The new statutory provisions made significant changes in the remedies provided to aggrieved taxpayers in all areas of ad valorem taxation, including cases where a taxpayer claimed an exemption from taxation.

"The 1980 reforms in tax procedure are contained primarily in three statutes. The first is K.S.A. 1980 Supp. 79-2005 which was effective July 1, 1980. The former language in that section, which permitted an aggrieved taxpayer to pay his taxes under protest and then file an action within thirty days in a court of competent jurisdiction, was eliminated. His sole remedy is now to file an application for refund within the thirty-day period with BOTA. This statutory change achieved the legislative objective of eliminating direct action in the district court, thus channeling all tax matters through BOTA, the paramount taxing authority in the state. *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972).

"The second important 1980 statutory change was in K.S.A. 74-2426, which provides in part:

'(a) Whenever the board of tax appeals shall enter its final order on any appeal or in any proceeding under the tax protest, tax grievance, tax exemption statutes or any original proceeding before the board other than the above cases said board shall make written findings of fact forming the basis of such determination and final order and such findings shall be made a part of such final order. The board shall mail a copy of its final order to all parties to the proceeding within ten days following the certification of the order. The appellant or applicant and the county appraiser shall be served by restricted mail.

'(b)(1) No appeal shall be taken from a final order of the board unless the aggrieved party shall have first filed a motion for rehearing of that order with the board and the board shall have granted or denied the motion for rehearing, or thirty days shall have lapsed from the filing of that motion with the board, from which it shall be presumed that the board has denied the motion. Any order issued by the board following a rehearing shall become the final order of the board.

'(2) Within thirty days following the certification of any final order of the board, on such motion for rehearing, any aggrieved party in such appeal or proceeding may appeal to the district court of the proper county.

'(3) No appeal shall be taken from any order of the board in a no-fund warrant proceeding issued pursuant to K.S.A. 12-110a, 12-1662 *et seq.*, 19-2752, 75-4361, 79-2938, 79-2939, 79-2951 and statutes of a similar character.

'(4) This statute shall be exclusive in determining appeals taken from all decisions of the board of tax appeals after the effective date of this

act and shall exclusively govern the procedure to be followed in taking any appeal from the board of tax appeals from and after such date.'

This statutory change was effective April 16, 1980, and permits an appeal from any order of BOTA including original proceedings before BOTA. It achieved the legislative objective by providing for judicial review of all tax exemptions and the other mentioned tax matters under an omnibus tax appeals procedure.

"The third statutory change was the enactment of a new statute, K.S.A. 1982 Supp. 79-213, effective July 1, 1980, which provides:

'(a) *Any property owner requesting an exemption* from the payment of ad valorem property taxes assessed, or to be assessed, against their property *shall be required to file an initial request for exemption, on forms approved by the board of tax appeals and provided by the county appraiser.*

'(b) The initial exemption request shall identify the subject property and state, in detail, the legal and factual basis for the exemption claimed.

'(c) The request for exemption shall be filed with the county appraiser of the county where the subject property is principally located.

'(d) After a review of the exemption request, and after a preliminary examination of the facts as alleged, the county appraiser shall recommend that the exemption request either be granted or denied, and, if necessary, that a hearing be held. If a denial is recommended, a statement of the controlling facts and law relied upon shall be included on the form.

'(e) The county appraiser, after making such written recommendation, shall then file the request for exemption and the recommendations of the county appraiser with the board of tax appeals.

'(f) Upon receipt of the request for exemption, the board shall docket the same and notify the applicant and the county appraiser of such fact.

'(g) After examination of the request for exemption, and the county appraiser's recommendation related thereto, the board may fix a time and place for hearing, and shall notify the applicant and the county appraiser of the time and place so fixed. In any case where a party to such request for exemption requests a hearing thereon, the same shall be granted. In all instances where the board sets a request for exemption for hearing, the county shall be represented by its county attorney or county counselor.

'(h) In the event of a hearing, the same shall be originally set not later than ninety (90) days after the filing of the request for exemption with the board.

'(i) When a determination is made as to the merits of the request for exemption, the board shall enter its order thereon and give notice of the same to the applicant, the county attorney and the county appraiser by sending to each a certified copy of its order.

'(j) The date of the order, for purposes of filing an appeal to the district court, shall be the date that a certified copy of the order is mailed to the party seeking to appeal.

'(k) During the pendency of a request for exemption, and in the event that taxes have been assessed against the subject property, no interest shall accrue on any unpaid tax for the year or years in question from the date the request is filed with the county appraiser until the expiration of thirty (30) days after the board issued its order thereon.

'(l) In the event the board grants the initial request for exemption, the same shall be effective for the period beginning with the date of first exempt use and ending on December 31 of the tax year in question. Thereafter, the tax exemption shall be renewed by the filing of an annual claim for exemption pursuant to K.S.A. 1982 Supp. 79-210 with the county appraiser of the county in which the subject property is principally located.

'(m) In conjunction with its authority to grant exemptions, the board shall have the authority to abate all unpaid taxes that have accrued from and since the date of first exempt use. In the event that taxes have been paid during the period where the subject property has been determined to be exempt, the board shall have the authority to order a refund of said taxes for a period not to exceed three (3) years.' (Emphasis supplied)." 233 Kan. at 962-66.

Finally, the *Tri-County Public Airport Authority* court concluded:

"The obvious *legislative intent in* enacting these statutes *was to provide an exclusive statutory remedy before BOTA in all cases involving a claim of tax exemption by any property owner,* including political subdivisions of the state. These statutory changes achieve the legislative objective of codifying tax exemption procedures." (Emphasis supplied.) 233 Kan. at 966.

We conclude in a like manner by holding that Colortyme was provided with a full and adequate administrative remedy under the provisions of K.S.A. 1992 Supp. 79-2005, K.S.A. 74-2426, and K.S.A. 1992 Supp. 79-213 for the determination of whether its rent-to-own property was tax-exempt under the provisions of K.S.A. 1992 Supp. 79-201m. Like the taxpayer in *Tri-County Public Airport Authority,*

"[Colortyme] made no attempt to avail itself of the administrative remedy; it had no right to resort to the courts in an independent action. It follows that the district court had no jurisdiction to determine this case and this court does not acquire jurisdiction over the subject matter upon appeal." 233 Kan. at 967.

As a practical matter, exhaustion of administrative remedies promotes harmony and serves the best interest of the public. The question presented is a difficult one, the resolution of which will affect not only the taxpayer involved but other enterprises

of a similar nature in our state. In the area of taxation, this question should be resolved by the paramount taxing authority in this state absent questions involving essentially nontax questions such as whether the taxing authority took the action without valid legislative authority; whether the taxing authority acted lawfully; or whether the action taken under the statute was so arbitrary, capricious, unreasonable, and subversive of private rights as to indicate a clear abuse rather than a bona fide exercise of power.

Exhaustion of administrative remedies does not forfeit the right to have the matter finally resolved by the courts. Once administrative remedies are exhausted, an aggrieved party has the right to have the matters reviewed by the court. See K.S.A. 74-2426. The remedy provided in K.S.A. 1992 Supp. 79-2005 and K.S.A. 74-2426 is available even to a delinquent taxpayer. *Board of Osage County Comm'rs v. Schmidt,* 12 Kan. App. 2d 812, 814, 758 P.2d 254, *rev. denied* 243 Kan. 777 (1988). See *In re Tax Protest of Rice,* 228 Kan. 600, 620 P.2d 312 (1980).

The exhaustion of administrative remedies promotes the proper relationship between the courts and the administrative agency involved. BOTA is charged with particular administrative and regulatory duties with respect to the question of exemptions. Matters of tax exemptions are administrative in character and peculiarly within the competency of BOTA. See *Dean v. State,* 250 Kan. 417, 421, 826 P.2d 1372 (1992); *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 95, 510 P.2d 132 (1973).

Because we find that Colortyme did not exhaust its administrative remedies, the district court did not have jurisdiction herein. This case is remanded to the district court with directions to set aside its judgment and to dismiss the case.

ABBOTT, J., not participating.

JAMES M. MACNISH, JR., district judge, assigned.