No. 41,712

Frances C. Newson and Mary V. Newson, James L. Hinckley and Lorena Jo Hinckley, Ferd G. Mueller and Bethene Mueller, D. J. Mitchell and Beth H. Mitchell, Harry N. Stiles and Glenna M. Stiles, John P. Sheffield and Lona M. Sheffield, W. F. Barton, Donald W. Coulson and Verdenia L. Coulson, *Appellees*, v. City of Wichita, Kansas, a Municipal Corporation; A. E. Howse, Mayor and City Commissioner of the City of Wichita, Kansas; Claude M. DeVorss, E. E. Baird, James L. Gardner and H. D. Lester, City Commissioners of the City of Wichita, Kansas, as Members of the Board of Commissioners of the City of Wichita, Kansas, and the Governing Body of the City of Wichita, Kansas; and C. C. Ellis, City Clerk of the City of Wichita, Kansas, *Appellants*.

(351 P. 2d 10)

Opinion filed April 9, 1960.

*Douglas E. Shay,* of Wichita, argued the cause, and *Fred W. Aley,* of Wichita, was with him on the briefs for the appellants.

*Donald E. Lambdin,* of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, Richard A. Render, Albert L. Kamas* and *David G. Arst,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to have a special assessment against the plaintiffs' real property for paving a certain alley in the City of Wichita, Kansas, declared illegal and void, and to enjoin the City and its officials from certifying the assessment to the county clerk.

The plaintiffs (appellees) are the owners of lots 3 to 10, inclusive, (see sketch) in Englewood Addition. The assessment ordinance apportioned the cost of paving the east-west alley (shaded

area in sketch) located between lot 1 on the north and lots 2 and 11 on the south equally between all the lots between Kellogg and Orme Streets, except lot 1 which was a much larger lot and which was assessed more than all the other lots combined. The owners of lots 1, 2 and 11 are not parties and are not involved in this appeal.

This action to enjoin the assessment was filed within the time required by law.

The principal contentions of the appellees on this appeal are that their property is not and cannot be benefited by the improvement, and that they received no actual notice of the attempt by the City to assess their property. Therefore, they contend the assessments are void. It was also alleged in the petition that the assessments made were arbitrary, unreasonable, discriminatory and disproportionate, but no evidence was introduced in support of such allegations.

The improvement was made in compliance with the provisions of G. S. 1949, 13-1011c. This section of the statute provides in part as follows:

". . . the cost of such improvements shall be assessed against the lots and pieces of land lying between said alley to be improved and the platted streets next adjacent thereto, . . ."

The City fully complied with the provisions of G. S. 1949, 12-608, including the giving of notice as required by this section of the statute. The plaintiffs in their petition allege:

"That each of the above named Plaintiffs herein have been notified by the Defendant, C. C. Ellis, the duly appointed, qualified and acting Clerk of the said City of Wichita, Kansas, Defendant herein, that unless said Plaintiffs herein pay said assessment, said City Clerk will be required to certify said assessment to the County Clerk of Sedgwick County, Kansas, to be placed on the tax rolls . . ."

And in plaintiffs' opening statement they say "we admit the sending of the notifications."

Issues were joined by the pleadings and the matter was tried to the court. In addition to the admissions made in the pleadings and in the opening statements of the parties, two stipulations were introduced in evidence. The first was that the plaintiffs were unaware of published notices and did not know their property would be assessed for the paving and improvement of the alley until they received the notice by mail of the special assessment against their property, although sometime prior to the assessments the plaintiffs did sign a paving petition which was circulated within the block.

At the time the petition was circulated the plaintiffs were under the impression that only lots 1, 2 and 11 in the block would be assessed for the improvement. It was further stipulated this impression was not given or represented to the plaintiffs by the City of Wichita or its employees. The second stipulation is that the plaintiffs were of the opinion the alley was of no special benefit to their property but that they had in fact on occasions used the alley.

No other evidence insofar as the record discloses was presented to the trial court.

The court found that the notice given by the defendants to the plaintiffs of the appraisement and assessment of plaintiffs' property was insufficient; that the assessments imposed upon the plaintiffs' property were unlawful, void and of no effect; and further found that the defendants should be permanently restrained and enjoined from certifying said special assessments to the county clerk of Sedgwick County for the purpose of placing the same upon the tax rolls. Judgment was entered in accordance with the foregoing findings.

Appeal has been duly perfected to this court by the defendants presenting the questions which are hereinafter considered.

The first question is whether the appellees can be heard to complain that their property has not been benefited when that question has already been determined by the legislature adversely to them.

The basis of the appellees' argument under 13-1011c, *supra,* which requires an assessment against the lots and pieces of land lying between the alley and the platted streets next adjacent thereto, is that the property to be assessed must lie next to and be adjacent to the alley. The alley in controversy is one which does not touch the appellees' property. The argument proceeds on the assumption that it was not the intention of the legislature to include property such as the appellees' in an assessment for such an alley.

We do not think the provisions of 13-1011c, *supra,* are susceptible of this interpretation. The lots and pieces of land lying between the alley to be improved and the platted streets next adjacent thereto have reference to *all of the property* lying between the alley in controversy and Kellogg Street next adjacent to the alley on the north and Orme Street next adjacent to the alley on the south. The statute does not contemplate that the property must be adjacent to the alley, but has reference to streets next adjacent to the alley

which are separated from the alley by the property lying between the alley and such streets next adjacent thereto in either direction.

The word "adjacent," if isolated, may be said to have an ambiguous meaning in this section of the statute, but when it is read in context with other language used it could not mean that the streets next adjacent to the alley in controversy were limited to Edgemoor Drive and Christine Avenue, because there is no property between the alley and these streets. These streets terminated the distance for which the alley was paved.

Because the appellees' property does not adjoin the alley in controversy at any point, they contend the alley is of no benefit to them and cannot constitutionally be included in an area liable to a special or local assessment to finance such improvement.

The rule of law on this constitutional point has been well stated in summary manner by the United States Supreme Court in *Chesebro v. Los Angeles Co. Dist.*, 306 U. S. 459, 83 L. Ed. 921, 59 S. Ct. 622, as follows:

"In the absence of flagrant abuse or purely arbitrary action, the State, consistently with the federal constitution, may establish local districts to include real property that it finds will be specially benefited by drainage, flood control, or other improvements therein, and, to acquire, construct, maintain and operate the same, may impose special tax burdens upon the lands benefited. *Hagar v. Reclamation Dist.*, 111 U. S. 701, 704-705. *Spencer v. Merchant*, 125 U. S. 345, 355. *French v. Barber Asphalt Paving Co.*, 181 U. S. 324, 342. And see *Houck v. Little River Drainage Dist.*, 239 U. S. 254, 262. And where, within the scope of its power, the legislature itself has found that the lands included in the district will be specially benefited by the improvements, prior appropriate and adequate inquiry is presumed, and the finding is conclusive. *Parsons v. District of Columbia*, 170 U. S. 45, 52. *Wagner, Inc. v. Leser*, 239 U. S. 207, 218. *Withnell v. Ruecking Const. Co.*, 249 U. S. 63, 69. *Hancock v. Muskogee*, 250 U. S. 454, 458. *Branson v. Bush*, 251 U. S. 182, 189-190. *Valley Farms Co. v. Westchester*, 261 U. S. 155, 162 *et seq. Milheim v. Moffat Tunnel Dist.*, 262 U. S. 710, 721. But where the district was not directly created by the legislature and there has been no determination by it that their property will be benefited by the local improvements the owners are entitled, under the due process clause of the Fourteenth Amendment, to be heard by some officer or tribunal empowered by the State to hear them and to consider and decide whether their lands will be specially benefited. *Fallbrook Irrigation Dist. v. Bradley*, 164 U. S. 112, 167. *Embree v. Kansas City Road Dist.*, 240 U. S. 242, 247. *Browning v. Hooper*, 269 U. S. 396, 405, 406.

"The legislature need not adopt any form of statement or finding for, in the enforcement of restraints imposed by the federal constitution upon the

power of States to assess and collect taxes, this Court regards the substance of their enactments as controlling rather than mere forms of expression employed. *Londoner v. Denver,* 210 U. S. 373, 385 . . ." (pp. 463, 464.)

The rule of apportionment among the parcels of land benefited also rests within the discretion of the legislature. It may direct the assessment to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits determined by commissioners. (*Bauman v. Ross,* 167 U. S. 548, 590, 42 L. Ed. 270, 17 S. Ct. 966, and cases cited therein.) Unless the exaction of special assessments by the legislature is a flagrant abuse of power, it does not amount to deprivation of property without due process of law under the Fourteenth Amendment to the Federal Constitution. There is no requirement of the Federal Constitution that for every payment there must be an equal benefit. (*Houck v. Little River District,* 239 U. S. 254, 60 L. Ed. 266, 36 S. Ct. 58.)

A case upon which the appellees rely in which arbitrary action was taken on the part of a local administrative body under the sanction of the state legislature is illustrated in *Myles Salt Co. v. Iberia Drainage Dist.,* 239 U. S. 478, 60 L. Ed. 392, 36 S. Ct. 204. But this case has no application to the facts presently before the court for two reasons: First, the legislature determined what land was benefited by the improvement of the alley in the instant case and not an administrative body under the sanction of the state legislature; and second, the finding of the legislature that lots and pieces of land lying between the alley to be improved and the platted streets next adjacent thereto are benefited by the improvement is a reasonable exercise of the legislative power, and not a flagrant abuse of power or purely arbitrary action as the facts in the *Chesebro* case illustrate.

The City of Wichita under 13-1011c, *supra,* was directed to assess the costs of paving the alley in controversy against the lots or pieces of land benefited by the improvement by an appraisal in the same manner as provided for the assessment of property under G. S. 1949, 12-608. It provides in part:

"As soon as the cost of such improvement is determined, the governing body shall determine and assess to each lot or parcel of ground liable for such special assessment the amount to be paid thereon, which amount shall be determined by the assessed value of the lots and pieces of land without regard to the buildings or improvements thereon, which value shall be ascertained by three disinterested appraisers appointed by the mayor and confirmed by the council or commission . . ."

In compliance with the foregoing statutory sections the appellees' lots were each given a "Value Assessment" of $109.99. Lots 2 and 11 were the same, but lot 1 was assessed $1,503.30.

The next question is whether constructive notice given by the City of Wichita by publication of the proposed special assessments against the appellees' property met the requirements of due process under the Fourteenth Amendment to the Federal Constitution.

Following the provisions of 12-608, *supra,* quoted above, this section of the statute goes on to direct the appraisers, after qualifying, to appraise such lots or pieces of land within five days and return such appraisement to the city council or commission at its first meeting after the appraisal is completed. The statute then provides:

". . . When said appraisement is returned and filed with the clerk, the governing body shall appoint a time for holding a special session to hear any complaint that may be made as to the valuation of any lot or piece of land appraised *as aforesaid, a notice of* which special session shall be given by the mayor in the official city paper; and said governing body at said special session may alter the valuation of any lot or piece of land, if in their opinion the same has been appraised too high or too low. The governing body shall immediately thereafter enact and publish an ordinance which shall hold good for all the installments, fixing said assessment hereinbefore provided, as to each lot or parcel of ground. The city clerk of such city shall mail a written notice to the owner of each lot or parcel of ground stating the amount levied against the same. The amounts levied against each lot or parcel of ground to pay for the bonds falling due in each year, and the interest due shall be levied and collected the same as other taxes. *No suit to set aside the said assessments shall be brought after the expiration of thirty days from the publication of the ordinance fixing said assessments."* (Emphasis added.)

The appellees, while admitting strict compliance with the foregoing statute, contend that the publication notice of the special session of the governing body did not meet the requirements of due process. They argue that where the legislature determined that notice must be given to the property owners such notice cannot be inadequate to afford due process under the Fourteenth Amendment. They rely on *Mullane v. Central Hanover Tr. Co.,* 339 U. S. 306, 94 L. Ed. 865, 70 S. Ct. 652; and *Walker v. Hutchinson City,* 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200.

The *Mullane* case holds in effect that the minimum requirements of the due process clause demand that deprivation of life, liberty or property by adjudication be preceded by a notice and opportunity for hearing appropriate to the nature of the case. In the opinion it was said:

". . . Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (p. 318.)

In *Walker v. Hutchinson City,* supra, the United States Supreme Court followed the *Mullane* case in a condemnation matter where the property owner was served by publication notice only. The property owner alleged that he had no actual knowledge of the proceedings until after damages had been fixed and the time for appeal had passed. It was said in the opinion:

"Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value." (p. 116.)

A special assessment upheld by the Wisconsin Supreme Court was struck down in *Wisconsin Electric Power Co. v. City of Milwaukee,* 352 U. S. 948, 1 L. Ed. 2d 241, 77 S. Ct. 324, in a *per curiam* decision by the United States Supreme Court, citing the *Walker* case. There the Wisconsin court (*Wisconsin Electric Power Co. v. Milwaukee,* 272 Wis. 575, 76 N. W. 2d 341) upheld constructive notice by publication, and the plaintiff had no actual notice *until it was too late to protest* the assessments against its property.

It is the contention of the appellees in the instant case that if a statute provides for notice at a certain stage of the proceedings, the question of adequacy must be directed to that notice and not be misdirected to a subsequent notice although required by the same statute. In focusing our attention upon the requirements of the due process clause and upon the facts, conditions and circumstances presented by the instant case, we cannot agree.

It is unnecessary that we dwell upon the basic distinction between the power of eminent domain and the power of the state to impose special assessments upon property benefited by local improvements. This comes under the State power of taxation. Each

of these powers is governed by its own principles. (*Houck v. Little River District*, supra; and *Spencer v. Merchant*, 125 U. S. 345, 31 L. Ed. 763, 8 S. Ct. 921.)

In the *Wisconsin Electric Power Company* case the plaintiff had no actual notice of special assessments made against its property until it was too late to protest. On the facts in the instant case the provisions of 12-608, *supra*, authorized the appellees to bring a suit to set aside the special assessments within thirty days after the publication of the ordinance fixing the assessments, and the appellees brought the instant action within the thirty-day requirement by reason of having received a notice by mail from the city clerk of the ordinance fixing the assessments, in addition to the required publication notice. At the hearing before the trial court in this action the appellees had the right to be heard on any matters concerning which they felt aggrieved, including the question of whether their respective lots or pieces of land had been appraised too high or too low.

It appears from the record, however, the basis of the appellees' complaint is primarily directed to the fact that their lots did not touch the alley which was improved, and by reason thereof they contend (*a*) their lots were not benefited, (*b*) the appraised value of their lots was illegally determined because it ignored the factor of special benefit, and (*c*) the special assessments against their lots did not bear any relation whatever to any special benefit. No evidence whatever was offered concerning the value of their lots which the appraisers were required to determine by making an "assessed value of the lots and pieces of land without regard to the buildings or improvements thereon."

In *Hetrick v. Village of Lindsey*, 265 U. S. 384, 68 L. Ed. 1065, 44 S. Ct. 486, the only point of contention made was that the Ohio statutes relating to special assessments for street improvements did not require a notice to, and a hearing on behalf of, the owner of the property assessed by the village council and therefore permitted the owner to be deprived of his property without due process of law. Another section of the general code of Ohio permitted the common pleas and superior courts to enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them back when collected. The holding of the court was expressed in the opinion as follows:

". . . It thus appears that the plaintiff in this case had had opportunity by contesting the assessment in court to review all the questions of law and

fact as to the validity and fairness of the assessment under the statutes of Ohio, that these facts were passed upon by the court and that the plaintiff had secured from that court a reduction of the assessment. In such a case it has been frequently decided that the judicial procedure constitutes due process of law and supplies every requirement for due notice and hearing. *McMillan v. Anderson,* 95 U. S. 37, 41; *Davidson v. New Orleans,* 96 U. S. 97, 104-5; *Spencer v. Merchant,* 125 U. S. 345, 355-6; *King v. Portland,* 184 U. S. 61, 70; *Ballard v. Hunter,* 204 U. S. 241, 255; *Embree v. Kansas City Road District,* 240 U. S. 242, 251; *Mt. St. Mary's Cemetery v. Mullins,* 248 U. S. 501, 506." (p. 387.)

The rule is stated in 48 Am. Jur., Special or Local Assessments, § 169, pp. 706, 707, as follows:

"The particular time in proceedings when notice, opportunity of protest, and hearing are afforded with respect to a special or local assessment is not very material, provided reasonable opportunity is given for such protest and hearing before any taking of property. So, it has been held that it is sufficient if the party is accorded the right on review or appeal or upon an application to set the assessment aside, . . . or if the right of injunction against collection is accorded, by which the validity of the assessment may be judicially determined. Whenever provision is made for a mode of contesting or affirming a special or local assessment in ordinary courts of justice, with such notice to the owners of property assessed as is appropriate to the nature of the case, the judgment in such a case cannot be said to deprive the owner of his property without due process of law . . ."

(Reference is made to the numerous decisions cited thereunder.)

We therefore hold under the foregoing authorities that the appellees were not denied due process of law under the Fourteenth Amendment to the Federal Constitution. The appellees had adequate notice pursuant to which they brought the instant action which enabled them to be heard in a court of law and fully present their grievances.

The appellees contend Chapter 122, Section 9, Laws of 1941 (G. S. 1949, 13-1011c), is a special law enacted under the guise of a general law, and to meet the situation where a general law might be made applicable. By reason thereof, this section is said to be invalid and in contravention of Article 2, Section 17, of the Kansas Constitution, citing *City of Kansas City v. Robb,* 164 Kan. 577, 190 P. 2d 398, and prior decisions.

The allegations of the appellees' petition do not specifically allege the unconstitutionality of the act in question under this particular provision of the Constitution, nor does it appear anywhere in the record that this question was presented to the trial court for consideration. The rule has been long established that acts of the

legislature are presumed to be constitutional and valid and no challenge thereof should be entertained on appeal to the Supreme Court unless the particular constitutional provision alleged to be violated, or the particular controlling record to prove the invalidity, has been pleaded and presented to the lower court. (*Board of County Commissioners v. Brown,* 183 Kan. 19, 325 P. 2d 382, and cases cited therein.) Therefore, the question of the constitutionality of the act on this point is not properly presented before this court for review.

In view of the limited position taken by the appellees in the trial court, as indicated by the evidence there presented and the questions presented on this appeal, it is unnecessary to remand this case for further proceedings. The judgment of the lower court is reversed.