No. 69,863

THE BOEING COMPANY, *Appellee*, v. OAKLAWN IMPROVEMENT DISTRICT, *Appellant*.

(877 P.2d 967)

Opinion filed July 19, 1994.

*Thomas R. Powell,* of Hinkle, Eberhart & Elkouri, L.L.C., of Wichita, argued the cause, and *Roger M. Theis,* of the same firm, was with him on the brief for appellant.

*Darrell L. Warta,* of Foulston & Siefkin, of Wichita, argued the cause, and *Eric F. Melgren,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case focuses on a dispute between a taxpayer and an improvement district arising from the district's levy of ad valorem taxes to pay for bonds issued to finance sewer improvements. Our journey to resolution of the controversy considers the constitutionality of the Improvement Districts Act, K.S.A. 19-2753 *et seq.* (Act); the requirement of administrative remedy exhaustion; and the interpretation of K.S.A. 1993 Supp. 79-2005(m) (disbursement by the county treasurer of taxes paid under pro-

test). The constitutional issue involves questions concerning sufficiency of notice to the taxpayer.

Voters in the Oaklawn Improvement District (Oaklawn or the District) in Sedgwick County authorized the issuance of general obligation bonds to finance a sewer repair project under the Act. Oaklawn levied ad valorem taxes against all property in the District to pay principal and interest payments on the bonds. The Boeing Company (Boeing), a taxpayer, sought an injunction under K.S.A. 60-907 prohibiting the levy, assessment, and collection of future taxes against Boeing's tangible property located within Oaklawn. The district court sua sponte declared the Act unconstitutional and granted the injunction. The constitutional issue was neither briefed nor argued by the parties. Oaklawn appeals. Our jurisdiction is under K.S.A. 1993 Supp. 60-2101(b) (direct appeal to this court from a judgment in a civil action in which a statute is held to be unconstitutional).

We hold the Act constitutional and reverse on the basis that Boeing has not exhausted appropriate administrative remedies.

### Facts

The facts stipulated to by the parties were approved by the district court and made a part of the record. Additional testimony was introduced at trial.

Oaklawn is a quasi-municipal corporation formed by the Sedgwick County Board of Commissioners for the purpose of undertaking improvements to properties within District boundaries. Oaklawn is adjacent to the south Wichita city limits. There are approximately 1,032 homes located in Oaklawn, most of which were valued at $20,000 or less, along with several small retail establishments. Boeing owns substantial commercial facilities located south of Wichita, some of which are inside the District. Boeing also leases and conducts operations on properties within Oaklawn.

One of Oaklawn's functions has been to provide sewer service to its residents. The primary method of financing sewer construction in the District has been by assessing the costs of the improvements as fixed sums against the properties benefited. In

1980, Oaklawn constructed a new trunk line running along the western edge of the District to carry sewage to the City of Wichita plant. The trunk line was financed by an Environmental Protection Agency (EPA) grant and tax assessments based on special benefit. Oaklawn's treatment plant was eliminated because the District was provided access to Wichita's plant.

In 1982, Oaklawn annexed, at the request of the landowner, 90 acres of unimproved property located between the boundaries of Oaklawn and the Boeing complex. The landowner petitioned for annexation to obtain sewer service for planned warehouses. The 90-acre tract was sold to Boeing in 1983. This land was part of a plan for the development of a high-tech commercial complex. As part of the planning for the project, Boeing performed engineering studies during 1983-84 to identify the sewer trunk line capacity required to service the proposed development area. Boeing determined that a 24-inch trunk line would be needed to handle the anticipated volume. Boeing informed Oaklawn of its plans and need for expanded sewage facilities. Boeing determined that the Oaklawn sewer system did not have sufficient capacity to accommodate the anticipated volume. As a result, Boeing decided to construct its own sewer system. Oaklawn's engineering representative was notified and concurred in Boeing's decision. Boeing estimated that the construction of the separate sewer system could cost $2.75 million.

A temporary connection to the Oaklawn system was disconnected in 1985, and Boeing's property was connected to the then operational new trunk line. At no time other than during the temporary sewer service was Boeing's 90-acre tract or any other property owned by Boeing connected to Oaklawn's sewer system. No other services, such as water, fire hydrants, or street lighting, have been provided by Oaklawn to Boeing properties.

Commencing in 1984 through 1987, Oaklawn, at the request of the owner, annexed acreage with three office buildings for the intended purpose of providing sewer service. Boeing leased the three buildings, with a total projected occupancy of 2,050 employees. Sewer service for these buildings is provided by Oaklawn. Sewage from the leased buildings does not pass through the improvement lines which are the subject of this litigation.

Boeing acquired 24 acres of unimproved land within the District. The 24-acre tract was also within the service area of the Boeing sewer line constructed in 1985, so the tract was connected directly to that system. Boeing did not seek service from Oaklawn.

Oaklawn determined it was necessary to undertake a major renovation and reconstruction of its existing lateral sewer lines located in the original residential portion of the District. Oaklawn applied for an EPA grant in 1988 to finance a portion of the projected repair costs. Several methods of spreading the $1.27 million in local costs were considered. On May 31, 1988, and June 4, 1988, Oaklawn held public meetings for the purpose of discussing financing of the lateral sewer improvements. Several articles in local newspapers concerning the project and issuance of the general obligation bonds to pay for the project appeared in June 1988 (two in the Derby Daily Reporter and one in the Wichita Eagle). Oaklawn's residents voted on June 7, 1988, to finance the local costs by the issuance of general obligation bonds to be repaid by ad valorem taxation. The EPA rejected the grant application.

Oaklawn decided to undertake the sewer improvements in two phases, with the first phase covering the portions of the lateral sewer lines in the worst condition at a cost of $1 million. A letter dated March 24, 1989, with the caption, "To All Citizens of The Oaklawn Improvement District," invited participation at an informational meeting held on April 1, 1989. The purpose of the meeting was to discuss funding for the first phase of the project. Boeing contends that it was neither notified by letter nor invited to attend this meeting. Notice of the election was published for two consecutive weeks in the Derby Daily Reporter. Issuance of the bonds required the approval of more than 50% of those voting. Sedgwick County Election Commission records indicate there were approximately 826 registered voters within Oaklawn. Boeing states that it was not allowed to vote in this election. The issuance of the first series of bonds was approved at the April 4, 1989, election by a vote of 77 in favor, 29 opposed. The second phase of the rehabilitation was similarly approved by a 40-0 vote in an election held March 20, 1990, following another informational meeting and notice by publication.

Upon completion of the rehabilitation project, Oaklawn levied ad valorem taxes against all taxable real and personal property in the district to fund the sewer bond installment payments. Of the total of $205,833 in taxes levied in 1990, Boeing paid $122,150 (59.3%). Boeing paid $116,280 (67.4% of the total of $172,571) in 1991 and was assessed for $202,587 (70% of the total of $289,608) in 1992. Although Boeing did not protest the payment of the 1990 taxes, it did pay its 1991 and first half 1992 taxes under protest and currently has refund actions pending before the Board of Tax Appeals (BOTA). The assessments are levied entirely against Boeing's tangible personal property because its real property is subject to an Industrial Revenue Bond exemption.

### The Pretrial Order

An amended pretrial conference order was agreed to by the parties and approved by the district court. Boeing contended that the levy exceeded the authority granted Oaklawn under the Act and that the tax was a taking of property under color of state law without due process or just compensation in violation of 42 U.S.C. § 1983 (1988). (Boeing alleged it received no special or direct benefit.) Boeing sought injunctive relief against the levy and collection of future taxes. Boeing did not seek to invalidate the issuance of the bonds. Oaklawn challenged the district court's jurisdiction, asserting Boeing's failure to exhaust administrative remedies. Oaklawn contended that the Act vested it with the power to levy ad valorem property taxes against all property in the District to repay bonds issued for a project benefitting the District as a whole. Oaklawn also claimed that the project benefited Boeing's property.

### Rulings of the District Court

The district court ruled from the bench, granting Boeing's requested injunctive relief against future collection of the ad valorem tax. The court stated:

"No evidence in the case before me [shows] how the matter has been treated by the plaintiff [Boeing] on the tax reports and the Court won't speculate about that because the Court finds it [is] in the final analysis, unnecessary to decide whether this is in fact a special or a general tax.

. . . .

". . . I am compelled by the facts of this case to hold that plaintiff in this case was denied, under the circumstances of this case, substantive and procedural due process by virtue of the failure of the enabling statute to provide for such due process. I, therefore, am going to declare the obligation of the plaintiff to be null and void and to enjoin any officials connected therewith from any proceedings to collect the same."

At a later bench hearing on the question of laches (the court held Boeing guilty of laches in delaying commencement of the instant action until October 1991), the trial judge observed:

"I feel that the evidence here is clear that the defendant Oaklawn Improvement District proceeded in accordance with the statute. There's no argument about that. It's the statute which is defective. I can see no alternative to that. I can't see any way statutorily that the Oaklawn Improvement District could have proceeded which would have rendered constitutional notice available to the defense under these circumstances. And, therefore, I think it's a fatal constitutional flaw in the statute, but I am fashioning the relief as prospective only."

The court invalidated the tax, holding that the Act was unconstitutional because of its failure to provide Boeing with substantive and procedural due process. Boeing was not given personal notice of Oaklawn's plans for the assessment. The district court relied on *Walker v. Hutchinson City*, 352 U.S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200 (1956) (reversing *Walker v. City of Hutchinson*, 178 Kan. 263, 284 P.2d 1073 [1955]). The court declined to decide whether: (1) Oaklawn had the power to levy general taxes; (2) the tax levy was a general or a special assessment; and (3) Boeing's property was benefited by the sewer improvements. The court also enjoined the Sedgwick County Treasurer from paying over to Oaklawn, or to the State on behalf of Oaklawn, Boeing's 1992 taxes.

## Appellate Motion to Stay

Oaklawn filed a motion in this court to stay the district court judgment. We granted a limited stay during the pendency of the appeal. Oaklawn was permitted to administratively perform all necessary acts to levy the bond assessment and to place the tax on the rolls for later collection in the event the District prevails on appeal.

### The Trial Court's Order Impounding Taxes Paid by Boeing Under Protest

Boeing was not entitled to a freeze on disbursement of taxes paid under protest. K.S.A. 1993 Supp. 79-2005(k) indicates that tax refunds are to be paid by the county and then charged to the taxing district involved. The freeze order was contrary to K.S.A. 1993 Supp. 79-2005(m). The plain language of the statute requires the county treasurer to forward all protested taxes to the taxing unit for whose benefit they were collected, *i.e.*, to the State Treasurer for the benefit of Oaklawn to pay the bondholders.

The resolution of the other issues renders this question moot.

### The Constitutional Issue

Our standard for reviewing the constitutionality of statutes is well known. Constitutionality is presumed. We resolve all doubts in favor of validity. Before the statute may be stricken, we must clearly identify a violation of the constitution. The burden of proof is on Boeing. See *Blue v. McBride*, 252 Kan. 894, 915, 850 P.2d 852 (1993). The proper construction of the statutes at issue in the instant case presents a question of law. Our review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

### Boeing's Contentions

*Walker* applies to the unique facts in the instant case because over ¾ of the total tax will be paid by a single taxpayer. *Walker* established the rule that "if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." 352 U.S. at 115. The tax directly affected Boeing's rights and Oaklawn knew who would pay the brunt of the tax. The evidence suggests that after Oaklawn failed to obtain the EPA grant, it proceeded with the sewer project solely because it believed the big taxpayer could be forced to pay for most of the project. Oaklawn made no attempt to notify Boeing in advance even though Boeing would be adversely affected by the bond financing method. Publication notice was merely for an election to issue general obligation bonds,

and the notice did not specify that Boeing would be taxed for ¾ of the bond payments. Oaklawn's failure to provide Boeing with notification is even more inexcusable given the fact that Oaklawn personally informed District residents by letter. Consequently, the trial court's reliance on *Walker* was well placed.

Boeing also relies on *Dodson v. City of Ulysses*, 219 Kan. 418, 420, 549 P.2d 430 (1976), citing the following language:

"[P]ublication notice alone is constitutionally insufficient when proceedings may *directly and adversely affect a party's rights* and his *whereabouts are known* or easily ascertainable. Under those circumstances some other form of notice, *reasonably calculated to inform the party*, is *required* to conform with the requirements of due process. [Emphasis added by Boeing.]"

Boeing reasons that the trial court's ruling of unconstitutionality was correct and that we need not reach the constitutional issue because the case can be disposed of on statutory grounds.

### Discussion

The absence of notice as a due process constitutional infirmity within the Act was neither advanced by Boeing nor briefed by the parties prior to the trial court's ruling. Oaklawn asserts that the record shows that the sewer repair bonds were issued in accordance with the statutory requirements and that the required publication notice was provided. The trial court acknowledges that Oaklawn complied with the provisions of the Act.

There is no constitutional privilege for personal notice and prior hearing in opposition to an improvement which may end in an assessment. A general tax levy to make up a deficiency in a special assessment fund is not invalid under the Fourteenth Amendment because bonds were issued without taxpayer notice. *Utley v. St. Petersburg*, 292 U.S. 106, 109, 111, 78 L. Ed. 1155, 54 S. Ct. 593 (1934). Due process is satisfied if the taxpayer is provided an opportunity to present challenges and defenses to the validity of the tax levied against property for the improvement. See *Chicago, etc. R.R. v. Risty*, 276 U.S. 567, 573, 72 L. Ed. 703, 48 S. Ct. 396 (1928); *Newson v. City of Wichita*, 186 Kan. 444, Syl. ¶ 4, 351 P.2d 10 (1960).

*Walker*, a condemnation case, did not involve an improvement project. In *Walker*, the City of Hutchinson condemned land

owned by a known resident whose name was on the City's official records. *Walker* addressed the following question: What type of notice is due a landowner as a prerequisite to proceedings to fix compensation for a taking in condemnation cases? 352 U.S. at 115. *Walker* held that under its facts the owner whose land was taken for public use was entitled to personal notice and an opportunity to be heard before the right to just compensation could be foreclosed. 352 U.S. at 115. Newspaper publication alone was held to be insufficient. 352 U.S. at 116.

In *Dodson*, 219 Kan. 418, we discussed *Walker* and rejected the due process rationale employed by the district court in the case at bar. The City of Ulysses, proceeding under the general paving law, passed a resolution authorizing the paving and curbing of two city blocks. Notice was published for two consecutive weeks in a newspaper of general circulation as required by statute. No protests were received and an ordinance was passed authorizing the improvement. Citing *Walker* and *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), the plaintiff taxpayers in *Dodson* sought to enjoin the special assessments levied against their property. The taxpayers contended that they were denied due process when they were only given publication notice of the City's intent to make the improvement. 219 Kan. at 420. We relied on *Utley* and distinguished the *Walker/Mullane* line of cases in rejecting the taxpayer constitutional due process claim. We held that "the mere making of a public improvement does not 'deprive any person of . . . property' " and that personal notice was not required. 219 Kan. at 421-22. Due process applies at the time when the ultimate tax liability is determined. 219 Kan. at 422.

*Dodson* observed that the legislature might well have provided, as a matter of fair play, that persons with a right to protest be given personal notice of that right. 219 Kan. at 423. Neither the relevant statute nor the Kansas Constitution required personal notice. *Dodson* was decided in 1976. The legislature has not added a personal notice requirement to the Act. The K.S.A. 19-2765(a)(9) and K.S.A. 19-2768 requirements for publication notice of elections were satisfied by Oaklawn. Oaklawn did not in-

itiate a condemnation action. *Walker* does not control the case at bar. The Act is constitutional.

### Exhaustion of Administrative Remedies

Boeing paid the 1990 Oaklawn tax liabilities imposed by the levy it now questions. Protests for 1991 and 1992 were filed under 79-2005. The protests are pending before BOTA. Oaklawn suggests that the BOTA protests raise the same issues presented in the case at bar: (1) Was Boeing's Oaklawn property directly benefited by the 1990 sewer improvements; and (2) Did Oaklawn have the power to levy and collect the tax against Boeing properties to finance the district's 1990 lateral sewer improvements which do not benefit Boeing's property? Boeing has clearly stated that its challenge is to the spreading of the tax against Boeing property. Boeing does not challenge the initiation of the 1990 sewer improvements or the validity of the bonds issued to finance the project.

In *J. Enterprises, Inc. v. Board of Harvey County Comm'rs*, 253 Kan. 552, 857 P.2d 666 (1993), we emphasized the significance of the doctrine of exhaustion of administrative remedies in taxation matters. Matters of assessment are administrative in character. 253 Kan. 552, Syl. ¶ 2. Such matters, "according to the present Kansas statutory and regulatory scheme, ought to be decided in the first instance by the paramount taxing authority in this state, the Board of Tax Appeals (BOTA)." 253 Kan. at 555. *J. Enterprises* expresses a number of legal rules applicable to a challenge brought under K.S.A. 60-907: (1) the interpretation of a statute involving taxation is, in the first instance, an administrative function entrusted to the appropriate administrative authorities, and K.S.A. 60-907 jurisdiction does not vest merely because a party claims that a statutory construction issue is presented; (2) an erroneous interpretation of a statute by administrative taxing authorities does not, alone, render a tax arbitrary, capricious, and unreasonable so as to vest a court with jurisdiction; (3) the mere fact that no refund relief is sought and that taxpayers seek only prospective relief does not defeat BOTA's initial jurisdiction; and (4) for a tax to be illegal so as to vest jurisdiction in the courts

under K.S.A. 60-907, the action of administrative officials must be without valid legislative authority, amount to fraud or corruption, or be so oppressive, arbitrary, or capricious as to amount to fraud.

Boeing has not claimed that the assessment of the ad valorem tax to pay principal and interest payments on the bonds was illegal or was arbitrary, capricious, or unreasonable and tantamount to fraud. Rather, Boeing claims that Oaklawn's spreading of the assessment was done erroneously, *i.e.*, the District misapplied the Act when it assessed Boeing's tangible personal property that allegedly did not benefit from the project. Boeing believes the Act only permits special assessments based on a special benefit to real property; consequently, the levy was unauthorized and constituted a taking of property without just compensation. Boeing reasons that the central question is Oaklawn's authority to tax Boeing property for the improvements.

The answers depend on the interpretation of statutes relating to matters of taxation and assessment. The question is whether the Act's language requiring "benefit" to property in the district and permitting "general taxation" for a project commenced under K.S.A. 19-2765(a)(9) is authority for either general ad valorem property taxes or special assessments. We hold that such a determination is administrative in character and properly entrusted initially to BOTA.

Boeing discusses *J. Enterprises*, highlighting the fact that we also recognized that some questions which may have tax implications are nonetheless

"essentially nontax questions such as whether the taxing authority took the action without valid legislative authority; whether the taxing authority acted lawfully; or whether the action taken under the statute was so arbitrary, capricious, unreasonable, and subversive of private rights as to indicate a clear abuse rather than a bona fide exercise of power." 253 Kan. at 566.

Boeing characterizes Oaklawn's actions, first in causing Boeing to build its own sewage system, and then in assessing several additional million dollars for repairs to Oaklawn's system, as so arbitrary, unreasonable, and subversive of private rights as to grant the court jurisdiction. Boeing asserts that it was deliberately kept

"in the dark"; consequently, Oaklawn should not now be permitted to assert the requirement of administrative remedy exhaustion.

Boeing advances the view that the primary issue in the instant appeal requires judicial interpretation of an improvement district's authority to tax and the question of whether Oaklawn exceeded that authority. Boeing maintains that no administrative expertise in the " 'assessment, exemption, equalization, or valuation' " of property is required. We do not agree. Boeing's advancement of an issue of statutory construction, coupled with an injunction request, did not vest the district court with jurisdiction.

The problem with Boeing's reliance on the unconstitutionality of the Act to overcome the exhaustion requirement is that the district court, not Boeing, raised the issue. Boeing is currently before BOTA, having protested payment of the 1991 and 1992 levy. Boeing has not exhausted its administrative remedies. We reverse and remand to the district court with directions to dissolve the injunction and dismiss the case.