No. 71,140

Dillon Stores, a Division of Dillon Companies, Inc.; Kwik Shop, Inc.; J. Enterprises, Inc., d/b/a Colortyme; Rent-A-Center, Inc.; ABC Rent To Own of Wichita, Inc.; FSF, Inc., d/b/a Nu-Way; Wichita Inns, Inc.; Basham Furniture Rental, Inc.; and Terrace Gardens, *Appellees*, v. Board of County Commissioners of Sedgwick County, Kansas; Susan Crockett-Spoon, Sedgwick County Clerk; and Jerry McCoy, Treasurer of Sedgwick County, Kansas, *Appellants*.

(912 P.2d 170)

Opinion filed March 8, 1996.

*Clarence D. Holeman*, assistant county counselor, argued the cause and was on the briefs for appellants.

*Robert J. O'Connor*, of Morrison & Hecker, of Wichita, argued the cause, and *Dwight D. Dumler*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: We hold that the plaintiffs failed to first exhaust their administrative remedies before the State Board of Tax Appeals (BOTA); thus, neither the trial court nor this court has jurisdiction to decide the issue which is the subject of this appeal.

The issue decided by the trial court is when Sedgwick County "discovered" personal property that had "escaped" taxation, either in whole or in part. The trial court found that, under K.S.A. 1994 Supp. 79-1427a(a) and (c), the County had "discovered" the escaped property on the date that the assessments were placed on the Sedgwick County tax roll. Based on this interpretation of the term "discovery," the trial court found that the statute of limitations had run on 1987 and prior year assessments and entered a permanent injunction against the County's collection of the 1987 and prior year tax assessments.

The Court of Appeals affirmed the district court. We granted review.

In its unpublished opinion, the Court of Appeals stated the background facts as follows:

"In February 1991, the County retained the accounting firm of Allen, Gibbs & Houlik (AG&H), to conduct compliance reviews of the personal property tax renditions filed by certain taxpayers, including plaintiffs. In order to conduct the compliance reviews, the County sent letters to the plaintiffs informing them of the compliance review and requested that they send depreciation schedules, financial statements, federal tax returns, lease agreements and purchase contracts to AG&H or the County. A compliance review letter was sent to plaintiff Dillon Stores in 1990. Compliance review letters were sent to the remaining plaintiffs in 1991. [County's proposed 'discovery' date.]

"After AG&H received the requested documents, asset lists were prepared. These lists contained all assets owned by a particular taxpayer as reflected by the taxpayer's own books and records. The lists prepared by AG&H were then sent to the Sedgwick County Appraiser's office.

"County employees valued the listed property. After applying 'economic life' and 'trending factors,' the County arrived at the net value or depreciated value of the property. The total value of the taxpayer's property, based on the asset lists, was then compared to the total value originally rendered by the taxpayer. The difference was deemed 'escaped valuation' and additional taxes were assessed on that amount.

"In December 1992, the Sedgwick County Treasurer issued additional or 'escaped' tax bills for tax years 1987 to 1988 to plaintiffs. Plaintiff Dillon Stores also received a supplemental tax bill for the tax year 1986. [Plaintiffs' proposed 'discovery date.'] The escaped tax bills issued to all nine plaintiffs for the tax years 1986 and 1987 totalled approximately $997,000."

After receiving tax bills, plaintiffs filed this injunction action in the District Court of Sedgwick County. Plaintiffs contemporaneously filed a challenge to the tax assessments with BOTA, raising the identical issues as in the injunction action. BOTA did not decide the case before it until after the trial court had already decided the case currently before us. We understand from oral argument that the BOTA case has been appealed. Thus, the district court ruled on the case and decided the "discovery" issue before BOTA ruled on the case. This raises the question of whether the plaintiffs needed to exhaust their administrative remedies and first present the case to BOTA in order to give the district court jurisdiction to decide the case.

This jurisdiction issue did not escape the Court of Appeals' attention. The Court of Appeals carefully analyzed the issue and stated: "It would seem the district court did not have jurisdiction as plaintiffs did not exhaust their administrative remedies. Therefore, one would think this case should be reversed and remanded to the district court with directions to dismiss and dissolve the permanent injunction."

However, the Court of Appeals did not reverse and remand the decision; rather, the Court of Appeals affirmed the district court's decision on the merits as to the proper interpretation of "discovery." In making this decision, the court stated:

"[S]omewhat to our amazement, we were informed offhandedly during a response to a question from the court during oral arguments, that BOTA had subsequently ruled on this statute of limitations question, *in this case*, in a written decision issued approximately two weeks before our oral argument.

". . . To further confuse the matter, BOTA ruled in favor of the plaintiffs, essentially agreeing with the district court's result. . . .

"We do not find [BOTA's] interpretation and decision to be unreasonable.

". . . . We therefore find ourself in a perplexing situation. The district court's decision to grant an injunction was probably incorrect at the time, as the position taken by the County, although eventually rejected by BOTA, was not indefensible or tantamount to fraud. However, it is difficult to rule that the injunction should be dissolved in light of an administrative decision on the case which confirms the trial court's result. The matter is further confused by the fact that the BOTA decision is still subject to further review, perhaps even by this court. . . .

. . . .

"However, before us is a specific ruling by BOTA on the underlying issue before us. Due to the deference paid by the courts to administrative agency determinations and interpretations of their own procedures, we believe it appropriate to recognize that ruling for the purpose of resolving the precise issue before us. As the trial court based its ruling on what turned out to be reasoning eventually approved by BOTA, we therefore affirm the trial court's decision."

The County contends that the district court did not have jurisdiction to interpret the term "discovery" under 79-1427a and find that the statute of limitations had run on some of the tax assessments because the plaintiffs had not exhausted their administrative remedies by first presenting this issue to BOTA. See *J. Enterprises, Inc. v. Board of Harvey County Comm'rs*, 253 Kan. 552, Syl. ¶ 7, 857 P.2d 666 (1993)("K.S.A. 1992 Supp. 79-2005, K.S.A. 74-2426, and K.S.A. 1992 Supp. 79-213 provide an exclusive administrative remedy before the Board of Tax Appeals in all cases involving a taxpayer's claim for tax exemption, and exhaustion of the administrative remedy is a prerequisite for jurisdiction in the district court."). The plaintiffs contend that they had standing to bring this issue directly to the district court before presenting it to BOTA, under K.S.A. 60-907(a), which states:

*"Illegal tax, charge or assessment.* Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same."

Under this section, the district court only has jurisdiction to enjoin the collection of a tax assessment if it is illegal. This court has defined an "illegal" tax assessment as an "action of an administrative official . . . taken without authority, or action of an administrative official . . . that is permeated with fraud, corruption, or

conduct so *oppressive, arbitrary, or capricious as to amount to fraud* in connection with the levy of any tax, charge or assessment." (Emphasis added.) *J. Enterprises*, 253 Kan. 552, Syl. ¶ 3. See also *Boeing Co. v. Oaklawn Improvement Dist.*, 255 Kan. 848, 857-58, 877 P.2d 967 (1994) ("for a tax to be illegal so as to vest jurisdiction in the courts under K.S.A. 60-907, the action of administrative officials must be without valid legislative authority, amount to fraud or corruption, or be *so oppressive, arbitrary, or capricious as to amount to fraud*"). (Emphasis added.)

Relying on the *J. Enterprises* and *Boeing* definition of an illegal tax assessment, the plaintiffs contend that the district court had jurisdiction to decide this case because the assessment of additional taxes for 1986 and 1987 by the County was "so arbitrary and capricious that it amounted to fraud." In making its determination that it had jurisdiction to decide the statute of limitations issue, the district court did not specify which factor of *J. Enterprises* gave it jurisdiction to hear the case without the exhaustion of administrative remedies. In its opinion, the Court of Appeals assumed the district court based its jurisdiction under the first ground listed in *Boeing* and *J. Enterprises*—that the County acted without valid legislative authority. However, the only *Boeing/J. Enterprises* factor which the plaintiffs cite to in their brief as giving the district court jurisdiction to hear this case is the last ground—that the County acted in an arbitrary and capricious manner as to amount to fraud. We will consider the issue solely as briefed by the plaintiffs. See *Pope v. Ransdell*, 251 Kan. 112, 119, 833 P.2d 965 (1992) ("Where [a party] fails to brief an issue, that issue is waived or abandoned.").

" 'This court has defined *arbitrary* to mean "without adequate determining principles . . . not done or acting according to reason or judgment"; *oppressive* as "harsh, rigorous, or severe"; *capricious* as "changing apparently without regard to any laws." (*Eureka B. & L. Ass'n v. Myer*, 147 Kan. 609, 78 P.2d 68.) In *City of Clay Center v. Meyers*, 52 Kan. 363, 365, 35 Pac. 25, we defined *constructive fraud* to mean "any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another.' " 208 Kan. at 430 (Fatzer, C.J., concurring and dissenting)." 253 Kan. at 560.

The plaintiffs contend that the County's 1986 and 1987 tax assessments were arbitrary and capricious because they were not

based on a factual foundation. According to the plaintiffs, the County's position that "discovery" occurred when the investigation letters were sent out, thereby making the 1986 and 1987 tax assessments within the statute of limitations, was arbitrary and capricious because this date of "discovery" was not based on fact. In making this argument, the plaintiffs point to the testimony of Patricia Ismert, Sedgwick County Appraiser, and Jerry Clothier, Assistant Chief Deputy Appraiser for Personal Property, at trial. This testimony indicated that when the investigation letters were sent out, the County had not discovered any escaped property but simply felt that the taxpayers' filings were "suspect." In fact, the County did not discover any escaped property for 20% of the taxpayers who received investigation letters. The plaintiffs also point out that the County could not determine that any property had escaped taxation until the investigation letters had been sent out, the accounting firm had prepared the assets lists, and the County valued the assets and then compared this value to the reported value. Thus, the plaintiffs contend that in light of this testimony, the County's position that the escaped property was discovered when the investigation letters were sent out is without factual foundation or any indicia of reason or judgment and thereby arbitrary and capricious. According to the plaintiffs, the County's arbitrary sending out of investigation letters and the selection of this date as the discovery date when in fact the escaped property could not be discovered until much later was so arbitrary and capricious so as to amount to constructive fraud.

We hold the plaintiffs are mistaken both as to their definition of arbitrary and capricious and as to their application of the arbitrary and capricious standard. Plaintiffs rely on *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 474, 749 P.2d 21 (1988), to define arbitrary and capricious as "unreasonable or 'without foundation in fact.' " (Emphasis added.) (Quoting *Pork Motel Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 381, 673 P.2d 1126 [1983].) However, *Zinke* does not concern the arbitrary and capriciousness which is needed to give a district court jurisdiction of a tax case without exhaustion of administrative remedies under K.S.A. 60-907. Rather, *Zinke* addresses arbitrariness

and capriciousness, which is necessary for a district court to reverse an administrative agency ruling. 242 Kan. at 474-75. The plaintiffs only cite a partial sentence in the *Zinke* opinion which gives the definition for arbitrary and capricious. The full sentence refers to the district court's review of an agency's action under the Act for Judicial Review and Civil Enforcement of Agency Actions. The full sentence states: "An *agency's action* is 'arbitrary and capricious' if it is unreasonable or 'without foundation in fact.' " 242 Kan. at 475 (quoting *Pork Motel*, 234 Kan. at 381). If the sole problem with the tax authority's assessment and discovery date is that it is not supported by facts, this is precisely the type of challenge which should be heard and decided by BOTA before the district court considers the problem. See *J. Enterprises*, 253 Kan. 552, Syl. ¶ 2 ("In the realm of taxes, matters of assessment . . . are administrative in character."). Then, if BOTA' s ruling is not supported by the facts, the reviewing court may reverse it as arbitrary and capricious, just as the *Zinke* court states.

Further, the plaintiffs contend that *Hurley v. Board of County Commissioners*, 188 Kan. 60, 66, 360 P.2d 1110 (1961), stands for the proposition that when assessments are made without a factual basis, but instead are based upon the whim of an administrative officer, then the assessments are arbitrary, unreasonable, and discriminatory. Again, the plaintiffs' reliance on *Hurley* is misplaced. In *Hurley*, the statute at issue stated that a tax for improvements may be assessed against landowners if it is found that all the landowners "benefited equally" from the improvements. The county found that the improvement benefited all landowners equally and assessed the tax. The plaintiffs then sought an injunction in district court to prevent collection of the tax, contending that the finding of equal benefit, a condition precedent to the assessment, was contrary to the facts. This court held that "the finding of the board of county commissioners that all lands within the district were 'benefited equally' simply is contrary to the facts; that the assessment . . . was therefore unjust, unreasonable, discriminatory and grossly disproportionate to the benefits received." 188 Kan. at 66. The plaintiffs contend that the county acted unreasonably in *Hurley* because it failed to properly fulfill a condition precedent which

was clearly defined in the statute before it assessed the tax; whereas, in this case, the County did not act unreasonably in interpreting discovery as it did and assessing the tax under this interpretation because 79-1427a does not define discovery. Moreover, *Hurley* does not use or define the arbitrary and capricious standard; rather, it found that the tax was "unjust, unreasonable, discriminatory and grossly disproportionate." 188 Kan. at 66. Thus, *Hurley* does not stand for the proposition that the County acted arbitrarily or capriciously in interpreting the undefined term "discovery" as it did.

Further, it is not clear that the County's interpretation of discovery is actually contrary to the facts or testimony presented at the trial. It is true that County officials testified they did not know and could not have "discovered" whether any of the plaintiffs' property had actually escaped taxation until well after the investigation letters were sent out. However, there are many terms in the English language which acquire a different definition from their common usage when used as legal terminology, *e.g,* "consideration" and "unavailable." Thus, the County's interpretation of the term discovery under 79-1427a is not necessarily consistent with the way in which the term discovery is used in everyday language. However, this does not mean the County acted arbitrarily and capriciously so as to amount to fraud when it interpreted the date of "discovery" to be the date the investigation letters were sent out. As *Boeing* states, "an erroneous interpretation of a statute by administrative taxing authorities does not, alone, render a tax arbitrary, capricious, and unreasonable so as to vest a court with jurisdiction." 255 Kan. at 857.

Finally, even if the County acted in an arbitrary or capricious manner (which the record before it does not support) in determining the date of discovery because such determination was not supported by the facts, the County did not act so arbitrarily or capriciously "as to amount to *fraud* in connection with the levy of any tax, charge, or assessment." (Emphasis added.) *J. Enterprises,* 253 Kan. 552, Syl. ¶ 3. See also *Boeing,* 255 Kan. at 857-58 ("for a tax to be illegal so as to vest jurisdiction in the courts under K.S.A. 60-907, the action of administrative officials must . . . be so op-

pressive, arbitrary, or capricious *as to amount to fraud*"). (Emphasis added.) This court has defined constructive fraud to mean " 'any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another.' " *J. Enterprises,* 253 Kan. at 560 (quoting *Northern Natural Gas Co.* v. *Williams,* 208 Kan. 407, 430, 493 P.2d 568, *cert. denied* 406 U.S. 967 [1972]).

At the trial of this case, the district court specifically found that Patricia Ismert, the Sedgwick County appraiser, did not act with bad faith. "In those cases where the county taxing authority acts in good faith and its action is taken in accordance with law but may involve an erroneous application of the law, administrative relief is provided for by statute." *J. Enterprises,* 253 Kan. at 559-60. Thus, the action of the administrative official in this case was not so "arbitrary or capricious as to amount to fraud in connection with the levy of any tax, charge, or assessment." 253 Kan. 552, Syl. ¶ 3; see *Boeing,* 255 Kan. at 858. Therefore, the district court did not have jurisdiction to hear the case or grant an injunction in the case.

The Court of Appeals agreed that the district court did not have jurisdiction to hear this case, stating:

"In this case, as in *J. Enterprises,* the County's interpretation of 'discovers' and the resulting assessment of escaped property taxes was not arbitrary, oppressive, or capricious. Nor did the County's action amount to constructive fraud. The County's interpretation of 'discovers' may or may not have been erroneous, but it was not illegal at the time it was decided in the district court. The district court seemingly did not have jurisdiction over this case because plaintiffs failed to exhaust their administrative remedies before BOTA."

We have no quarrel with the practicality of the Court of Appeals in deciding the case, despite having determined neither it nor the trial court had jurisdiction to do so. The problem is simply that if "a district court had no jurisdiction, an appellate court does not acquire jurisdiction over the subject matter upon appeal." *J. Enterprises,* 253 Kan. 522, Syl. ¶ 2. It sounds appealing to say that eventually the identical issue will be before us, so we should go ahead and decide the issue now. However, an appellate court can never be certain that the exact issue will be presented to it with the same facts and procedural history. In any event, the legislature

has not given us the jurisdiction to address the issue presented. We have no authority to assume jurisdiction on the theory that it is the practical thing to do.

The trial court and Court of Appeals are reversed, and the appeal is dismissed for lack of jurisdiction. The case is remanded to the trial court with instructions to dissolve the injunction.